H. DeWALT ET AL. v. W. BARTLEY ET AL. (2)

E. H. RIPPLE v. LACKAWANNA CO. ET AL.

A. J. MEREDITH ET AL. v. LEBANON CO. ET AL.

APPEALS BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY, AND THE COURTS OF COMMON PLEAS OF LACKAWANNA AND LEBANON COUNTIES, RESPECTIVELY.

Argued April 20, 1892—Decided May 2, 1892.
[To be reported.]*

1. Legislation on the subject of elections is within the constitutional power of the legislature, so long as it merely regulates the exercise of the elective franchise, and does not deny the franchise itself, either directly or by rendering its exercise so difficult and inconvenient as to amount to a denial.

2. The act of June 19, 1891, P. L. 349, prescribing and regulating the use of an official ballot, does not transcend the powers of the legislature. While prescribing reasonable regulations, requisite to effect its object, it carefully preserves the right of each elector to vote for whom he pleases, without any unnecessary inconvenience.

3. Said act is not in violation of the constitutional provisions that elections shall be free and equal, and that all laws regulating elections shall be uniform throughout the state. Its title is sufficient, and there is nothing in it which is so clearly a violation of the constitution as to justify the court in striking it down.

4. If the fact were, as was contended in this case, that the act does not apply in any one of the cities of the commonwealth whose boundaries are not co-extensive with those of the county, it would have to be declared unconstitutional, as local and special legislation; but it applies to all public offices throughout the state.

5. Under § 23, authorizing any voter to "insert" in the space provided therefor any name not already on the ballot, such insertion need not be by writing, but may be made by the use of a printed adhesive slip; and such use is not excluded, under the maxim, expressio unius, etc., by the fact that § 12 authorizes such slips to be used for another purpose.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, Mc-COLLUM, MITCHELL and HEYDRICK, JJ.

Nos. 411, 429, 457 January Term 1892, Sup. Ct.; courts be-

---

* Reported, as directed, by advancement from the Eastern District.

low, No. 746 December Term 1891, C. P. No. 2 Philadelphia
County; No. 4 April Term 1892, C. P. Lackawanna County;
and No. 2 Equity Docket 1892, C. P. Lebanon County.

## DeWalt v. Bartley.

To No. 746 December Term 1891, of the Court of Common
Pleas No. 2 of Philadelphia county, Hiram DeWalt and others
filed a bill in equity against William Bartley and others, county
commissioners; Thomas M. Thompson, controller, and George
D. McCreary, treasurer of the county of Philadelphia.  The
bill recited the principal provisions of the ballot act of June 19,
1891, P. L. 349; averred that at the last preceding general elec-
tion, candidates were nominated and presented for the suffrages
of the qualified electors of the state by three recognized and
organized political parties, to wit, the Republican, Democratic
and Prohibition parties; that the highest vote polled for a state
officer was for state treasurer, and the highest vote polled in the
county of Philadelphia was for register of wills; set out the
vote cast in the state for each candidate for the office of state
treasurer, and the vote cast in Philadelphia for each candidate
for the office of register of wills, showing that in each instance
the candidates of the Prohibition party received less than three
per centum of the total vote cast; averred that the plaintiffs
were taxpayers and qualified electors residing in Philadelphia
county and belonging to the Prohibition party; that the voters
of that party were, by the operation of said act, denied the right
of making nominations by conventions and of having the names
of their candidates printed upon the official ballot, etc.; that the
effect of the act was to give to one class of voters an advantage
in making nominations and exercising the elective franchise
which it denied to others; and that by reason of such inequality
and discrimination it was in conflict with § 5, article I.; §§ 1, 7
article VIII., of the constitution.

The prayers of the bill were that said act of June 19, 1891,
be declared unconstitutional and void, or that so much there-
of as the court might adjudge to be in conflict with the constitu-
tion, be declared null and void; that the commissioners of said
county be enjoined from incurring any expense in the execu-
tion of said act; that said controller be enjoined from counter-
signing, and said treasurer from paying any warrant drawn on

Statement of Facts.

the treasury of said county for such expenses; and for general relief: See DeWalt v. Bartley (1), ante 527.

An injunction affidavit was filed in support of the averme ts of fact contained in the bill.

After a hearing on a motion for a preliminary injunction, the court, FELL and PENNYPACKER, JJ., on March 17, 1892, without opinion filed, entered a decree refusing the injunction prayed for; whereupon, the plaintiffs took the appeal at No. 411, filing the following assignments of error:

1. The court erred in refusing the injunction.

2. The act of June 19, 1891, is in conflict with § 5 of the Declaration of Rights, which commands that "Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

3. The said act is in conflict with § 7 of article VIII. of the constitution, which commands that: "All laws regulating the holding of elections by the citizens . . . . . shall be uniform throughout the state;" which means, not only that such laws shall be uniform throughout the state, but they shall be uniform also in their operation on the electors in all parts of the state.

4. The said act operates unequally on the electors of the state, by conferring advantages both in making nominations and in voting for candidates of political parties whose voters equal three per centum of the highest entire vote for any office cast in the state at the last preceding general election, which it denies to political parties whose voters do not equal said per centum, though equally qualified under the constitution; thus making numbers, by the operation of the act, the basis for conferring such advantages on the voters of the Republican and Democratic parties, and for denying the same to the voters of the Prohibition party.

5. The act discriminates in causing to be printed on the official ballot at the expense of the county the names of the candidates of certain political parties, while it prohibits the printing thereon the names of the candidates of certain other political parties, and also by prohibiting voters using slips in the blank on the official ballot, with the names of their candidates printed thereon, thus forcing the last named voters either to vote for the names printed on the official ballot, or to write in the blank the names

of the persons they desire to vote for. It is therefore suggested that the giving to some voters the use of the printing press and denying it to others, is flagrant inequality not warranted by the constitution.

6. The act in its practical operation is unequal and discriminating, by dividing the electors of the state into classes, to wit: 1. Those who in party association equal the said three per centum. 2. Those who in party association do not equal said per centum; and 3. Those who vote independently of party. And it prescribes a different rule for each class, and thus the act is unequal, and it is not uniform in operation.

· RIPPLE v. LACKAWANNA CO.

· On March 15, 1892, Ezra H. Ripple, a citizen, taxpayer and resident of the city of Scranton in Lackawanna county, filed a bill in equity against said county, and Horace L. Halstead and others, the commissioners thereof. The bill averred that there were sufficient election rooms, polling places and ballot boxes, in the several election districts of Lackawanna county, according to the requirements of the several statutes enacted prior to June 19, 1891; that a municipal election was to be held in the city of Scranton on the third Tuesday of May, for the sole purpose of deciding the question of increasing the debt of the city for municipal purposes; that the county commissioners were about to make contracts, and to expend the public moneys for the purchase of voting booths, ballot boxes, printing tickets, etc., for the holding of said special election, and also for the holding of all other public elections thereafter, in accordance with the provisions of the act of June 19, 1891; that said act is unconstitutional and void, and the proposed acts of the commissioners unwarranted and illegal. The prayers of the bill were that the making of such contracts and expenditures be restrained by preliminary and permanent injunction, and for general relief.

· After the hearing of a motion for a preliminary injunction, upon the bill and affidavits filed by the plaintiff, the court on March 21, 1892, without opinion filed, entered a decree refusing the motion. Thereupon, the plaintiff took the appeal to No. 429, specifying that the court erred:

1. In refusing the preliminary injunction prayed for.

2. In not granting the same to the end that it might thereafter be made permanent.

## MEREDITH v. LEBANON COUNTY.

At No. 2 Equity Docket 1892, in the Court of Common Pleas of Lebanon county, A. J. Meredith and others filed a bill in equity against the county of Lebanon, and William F. Benson and others, county commissioners, averring that said commissioners had officially determined to procure, prepare and equip election rooms and polling places, and furnish the same, so as to conform in detail to the provisions of the act of June 19, 1891, and to expend large sums of money for that purpose; that said act is unconstitutional and void under § 7, article III., and § 7, article VIII., of the constitution; praying for an injunction to restrain the making of such expenditures, and for general relief.

The defendants filed an answer averring that the act of June 19, 1891, is constitutional and valid.

After hearing on bill and answer, the court, McPHERSON, J., entered a decree refusing the injunction prayed for and dismissing the bill at the costs of the plaintiffs; whereupon, the plaintiffs took this appeal, specifying that the court erred:

1. In refusing the injunction prayed for.

2. In not declaring the act of 1891 unconstitutional and void.

3. In not declaring said act to be local and special, and in contravention of § 7, article III., and § 7, article VIII., of the constitution.

*Mr. Amos Briggs*, for DeWalt and others, appellants in No. 411:

The constitution expressly guarantees to all electors two things: (1) The right of suffrage, and (2) that the manner or means by which the right is to be exercised shall be free and equal: § 5, article I.; §§ 1, 7, article VIII. If the act of 1891 is discriminating, and not equal and uniform in its operation upon all the qualified voters of the state, it clashes with these constitutional provisions and must fall: Buckalew on Const., 201.

1. The ground of our complaint against the act is, not that

it denies the right of suffrage but that it abridges the freedom of voting, and in its practical operation destroys constitutional equality and uniformity in voting, by discriminating against some voters and in favor of others, notwithstanding all of them are alike qualified under the constitution. It deals with the electors as associated together in party groups, and makes the respective numbers in different political associations the basis for conferring on some voters the freedom, equality, and uniformity assured to every elector by the constitution, and for denying these to others.

2. As to the making of nominations, and the privilege of voting for candidates in a group, the act produces odious inequality and unjust discrimination. It is really an act to stifle independent voting and strangle small political parties. If the legislature has power to draw a per-centum line between voters, under the pretext of regulation, it may put the line just where it pleases,—at thirty or sixty per cent, instead of three. The maxim, de minimis, has no application to constitutional law, nor, indeed, to any law mandatory in effect. Testing this law by the results of the last election, the voters of the Republican and Democratic parties have privileges under it which are absolutely denied to those of the Prohibition party. This is a palpable violation of the freedom and equality assured by the constitution.

3. A large percentage of the voters of small political parties will practically be disfranchised. They are allowed but three minutes in which to recollect and write the names of the thirty-two presidential electors, and the various candidates for state and county officers for whom they wish to vote; and laboring men, whose fingers are not flexible and who handle a pen with difficulty, will find it impossible to complete their ballots in that time. Nor can these difficulties be obviated by the use of printed adhesive slips. The entire trend of the act leads to the conclusion that there can be no printed names put on the official ballot, except those which the commissioners have caused to be printed on it. Moreover, the fact that in § 12 the act provides for the use of printed slips in one instance, excludes the idea of their use in any other, and this is the conclusion reached by the official compiler of the Pamphlet Laws, as indicated by his marginal notes to § 14.

*Mr. Charles C. Binney* and *Mr. Charles F. Warwick*, for the appellees in No. 411 :

1. A statute will not be declared unconstitutional except in a very clear case: Moore v. Houston, 3 S. & R. 169; Sharpless v. Philadelphia, 21 Pa. 147; Speer v. School Dir., 50 Pa. 150 ; Penna. R. Co. v. Riblet, 66 Pa. 164; Powell v. Commonwealth, 114 Pa. 265 ; Cooley on Const. Lim., 192, 197 ; Erie R. Co. v. Casey, 26 Pa. 289.   As to the meaning of " free and equal elections," see Cooley on Const. Lim., 47; Patton v. Coates, 41 Ark. 111;   People v. Hoffman, 116 Ill. 587 (56 Am. Rep. 793) ; Buckalew on Const., 10.   To secure them, secrecy is necessary: Wigmore's Australian Ballot, 1–67; Common Council v. Rush, 82 Mich. 532; and the term " ballot," used in the constitution, implies secrecy : Cooley on Const. Lim., 760 ; Temple v. Mead, 4 Vt. 535.; Williams v. Stein, 38 Ind. 89 (10 Am. Rep. 97) ; Jones v. Glidwell, 53 Ark. 161 ; People v. Cicott, 16 Mich. 283 (97 Am. Dec. 141) ; Common Council v. Rush, 82 Mich. 532; Brisbin v. Cleary, 26 Minn. 107 ; State v. Hilmantel, 23 Wis. 422; Commonwealth v. Woelper, 3 S. & R. 29 ; Kneass' Case, 2 Pars. 553 ; but the old form of ballot was not secret, and the absence of secrecy permitted abuses to remedy which was the object of the act of 1891.

2. The act concerns matters within the legislature's power to regulate : Patterson v. Barlow, 60 Pa. 54.   The use of official ballots necessitates some regulation of nominations : Chateau v. Election Commissioners, (Mich.) 50 N. W. Rep. 102.   The regulations on this subject, in the act of 1891, are as favorable to the voters of small parties as those enacted in other states which have adopted the Australian ballot.   The language of the statute does not exclude the use of "stickers;" and it is well known that under the Massachusetts act of May 29, 1888, the language of which is the same, they have frequently been used.   The regulations contained in the act are reasonable ; in such matters, the convenience of the few must yield to that of the many : Cook v. State, 90 Tenn. 407.   But, even if the provision as to the percentage of electors required to make a party nomination be unconstitutional, this will not affect the rest of the act, and it can operate with the restriction eliminated: Cooley on Const. Lim., 210 ; Rogers v. Jacob, 88 Ky. 502; Common Council v. Rush, 82 Mich. 532.

Arguments.

*Mr. P. P. Smith* and *Mr. I. H. Burns,* for Ezra H. Ripple, appellant in No. 429 :

1. The act of June 19, 1891, is a special and local law. It cannot go beyond its title, which is confined to the "nomination and election of public officers ; " and therefore it can have no operation as to other elections, e. g., upon a proposition to amend the constitution, or to increase municipal indebtedness. But, if it does not apply to all elections, it offends against § 7, article III. of the constitution, forbidding local or special laws regulating the conduct of elections, and also against § 7, article VIII., requiring all laws regulating elections to be uniform. The moment we admit that it is not good as to all elections, it becomes a special law and must fall as a whole. The difficulty cannot be avoided by the doctrine of classification. That doctrine is confined to narrow limits, defined by imperative necessity : Ayars' App., 122 Pa. 281 ; and there exists no necessity for classifying elections.

2. The act is special and unconstitutional in that it unnecessarily attempts to classify the voters of the state with reference to political affiliations, and also upon an educational test. It is special and local, in that it legislates differently for portions of the same class of officers with reference to their locality, the regulations applicable to certain officers in boroughs and townships being different from those prescribed as to the same officers in other districts. These officers cannot be classified for legislative purposes : Weinman v. Railway Co., 118 Pa. 201. And the title of the act is defective in not giving notice of the provisions in the body of the act regulating the practice of the courts, and also in that it gives no notice of the attempt made in § 37 to repeal certain specified laws or parts of laws.

3. The act destroys the freedom and equality of elections, and clearly prevents the free exercise of the right of suffrage. The time limit of three minutes in which to prepare the ballot would be an absolute bar preventing thousands of intelligent citizens from voting at all. Electors have a right to vote for whom they please, nor can they be compelled to procure " pasters, " supposing that their use is permissible under the act, which is extremely doubtful ; and any law which deprives the voter of the time necessary to prepare and cast a written ballot is unconstitutional. The prohibition, in § 5, article I. of the

Arguments.

constitution, of any interference with the free exercise of the right of suffrage is new and not to be found in other constitutions. It was the law, before the adoption of the present constitution, that the right to vote could not be substantially impaired by regulation : McCreary on Elections, 57, § 91 ; Commonwealth v. Maxwell, 27 Pa. 444 ; Page v. Allen, 58 Pa. 338. This constitution goes further, and protects the manner of ex ercising the right from interference or discrimination.

4. The act is unconstitutional, in that it confers judicial powers on ministerial officers, in violation of § 1, article V. of the constitution, making the decision of such officers final as to the formal sufficiency of nomination papers, etc.; in that it delegates legislative powers to a ministerial officer, by authorizing the secretary of the commonwealth to prescribe forms, which has heretofore been recognized as a legislative duty : Locke's App., 72 Pa. 494; in that it prevents all electors, except possibly those who are unable to prepare their ballots, from having them attested in the manner specified in § 4, article VIII. of the constitution, § 31 of the act making it a misdemeanor for any voter to show his ballot to any other person ; in that it interferes with the federal and state overseers of elections, by prohibiting all persons from remaining within the guard-rail after the polls are closed, except " election officers, " which term does not include the overseers, either in the act itself or in the constitution : United States v. Clark, 22 Fed. R. 387 ; and, in that it authorizes electors to nominate and vote for a candidate " for each office to be filled " in every case, contrary to the provisions of § 16, article V., and § 7, article XIV. of the constitution.

*Mr. Henry A. Knapp*, for the appellees in No. 429 :

1. A law is uniform when all persons brought within the relation and circumstances provided for, are affected alike ; when it has uniform operation upon all within the class upon which it purports to operate : Heck v. State, 44 Ohio St. 539 ; Adler v. Whitbeck, 44 Ohio St. 573 ; Senior v. Ratterman, 44 Ohio St. 678 ; Anderson L. Dict., 1068; Eyde v. Robertson, 112 U. S. 594. The act of June 19, 1891, is not a local or special law. Its title is sufficient. It has one subject, the election of public officers, which is clearly expressed in its title.

2. So far as it deals directly with votes on questions submitted

to the people, it does so incidentally. If a vote is to be taken upon a question, along with the votes for public officers, the former must obviously be so regulated as not to interfere with the latter. The regulation of the former is an incident of the regulation of the latter: State v. Bush, 46 Kan. 138; State v. Macklin, 41 Mo. App. 335; Commonwealth v. Wyman, 137 Pa. 508.

3. Votes on questions, when not taken at the election of public officers, are governed by act of June 9, 1891, P. L. 252. If, however, this subject is not properly covered by the title, the rest of the act will not be affected: Cooley on Const. Lim., 212. It will probably be found, on trial, that the inconveniences of which the appellant so loudly complains, exist only in his imagination. It is not to be presumed that the election officers will all refuse, if requested, to attest a voter's ballot.

*Mr. George B. Schock* and *Mr. Thomas H. Capp,* for Meredith and others, appellants in No. 457 :

1. The act of June 19, 1891, is local in its application, because it does not apply to cities of the second and third classes. In other words, it applies to no city unless its boundaries happen to be co-extensive with those of a county. If any doubt could exist on this point, a reading of paragraph 1, § 10, would dispel it. The author of the act knew that in Philadelphia county assessors are not elected by the people, and when he came to provide for the public notice to be given by the sheriff, of the holding of elections, he carefully excluded assessors from such notice. This shows that cities were not in the mind of the legislature.

2. It seems to have been forgotten that, whereas the city and county of Philadelphia are co-extensive, and the county officers are city officers, this state of affairs does not exist as to the other cities of the commonwealth. Again, § 13 provides that the county commissioners shall ascertain the offices to be filled, except in boroughs and townships. The application of this is easy as to the city and county of Philadelphia, but its application to the other counties of the state was certainly not considered by the framers of the act. This court cannot read into the act words which were left out by the framers, either by accident or design: Pittsburgh v. Kalchthaler, 114 Pa. 552.

Opinion of the Court.

3. But suppose the act were construed to include cities. It would still be unconstitutional, on account of the diversity of the regulations respecting the nomination and election of the same officers in different localities: Frost v. Cherry, 122 Pa. 417; Ayars' App., 122 Pa. 266. An act which requires the commissioners of Lebanon county to supervise the election of school controllers in the city of Lebanon, and does not require the commissioners of Schuylkill county to supervise the election of the same class of officers in the borough of Pottsville, is not uniform. This court has never held that cities can be classified for other than purely municipal purposes.

*Mr. Luther F. Houck,* for the appellees in No. 457:

Only a clear, plain and palpable violation of the constitution will justify the courts in declaring a statute void: Speer v. School Directors, 50 Pa. 150; Craig v. First P. Church, 88 Pa. 42; Kilgore v. Magee, 85 Pa. 410; Hilbish v. Catherman, 64 Pa. 154. The objection that the act is local or special, is not sustained by an examination of its provisions. It is manifestly intended to apply to all public officers throughout the commonwealth. The fact that the preliminary procedure in boroughs and townships differs from that in cities and counties, does not amount to a violation of the constitution: Evans v. Phillipi, 117 Pa. 237. And if the provision directing the omission of assessors from the sheriff's proclamation be unconstitutional, it simply drops out of the act.

OPINION, Mr. CHIEF JUSTICE PAXSON:

Each of the above cases is an appeal from the refusal of the learned judge below to grant a preliminary injunction. The object of the respective bills was to test the constitutionality of the act of assembly, approved June 19, 1891, entitled: "An Act to regulate the nomination and election of public officers; requiring certain expenses incident thereto to be paid by the several counties and certain other expenses to be paid by the commonwealth, and punishing certain offences in regard to such elections."

The effect of these proceedings, commenced in different sections of the state, is to seriously embarrass those persons whose duty it is to make the necessary preparations for holding the

next general election under said act. It is therefore more important that the cases should be disposed of promptly, than that we should elaborate our reasons for our decision. This opinion will be limited to the announcement of our conclusions, with such brief comments only as the occasion requires.

It is proper to observe, at this point, that the bill in each case asks us to declare the entire act unconstitutional. While certain sections of it have been especially criticised, the litigation is directed against the act as a whole. Were we to declare the sections thus criticised unconstitutional, the act thus emasculated would be of little use even if the remainder of it could be enforced.

There is no doubt of the power of the legislature to regulate elections. It was said in the recent case of Cusick's Election, 136 Pa. 467: " The legislature has, from time to time, passed various laws to regulate elections. The object has always been to protect the purity of the ballot. It is too late to question the constitutionality of such legislation, so long as it merely regulates the exercise of the elective franchise, and does not deny the franchise itself." See, also, Patterson v. Barlow, 60 Pa. 54. Abundance of authority might be cited were it necessary. The test is, whether such legislation denies the franchise, or renders its exercise so difficult and inconvenient as to amount to a denial.

The act provides for a secret ballot. That is manifestly its main purpose, and it is in entire harmony with article I., § 5, of the constitution, which declares that: " Elections shall be free and equal." This means that every citizen shall have an equal right to cast a free ballot. This is the letter of the constitution, and it is a right which no legislature can interfere with. The spirit of the constitution requires that each voter shall be permitted to cast a free and unintimidated ballot. This the act of 1891 was intended to secure. An election to be free must be without coercion of every description. An election may be held in strict accordance with every legal requirement as to form, yet, if in point of fact the voter casts the ballot as the result of intimidation ; if he is deterred from the exercise of his free will by means of any influence whatever, although there be neither violence nor physical coercion, it is not a free and equal election within the spirit of

the constitution.  The framers of the act in question have
evidently reached the conclusion that the only adequate guar-
anty of free and equal elections, within the letter and spirit
of the constitution, is absolute secrecy.  They therefore have
provided a secret ballot.

The provisions of the act have been summarized as follows:

1. The exclusive use of uniform official ballots, printed at
the costs of the counties, containing the names of all candi-
dates nominated, and space for the insertion of other names.

2. The legal nomination of the candidates whose names are
to appear on the official ballots, such nomination to be made
either: (*a*) By certificates, signed by the presiding officer and
secretaries of the authorized nominating body of the political
party, which, at the preceding election, polled three per cent
of the largest vote cast for any office in the state, or in that
portion of it for which the nomination is made; or, (*b*) By
papers signed by qualified electors to the number of one half
of one per cent of the largest vote cast at the preceding elec-
tion for any officer elected for the state at large, if the nomi-
nation is for the state at large, otherwise to the number of
three per cent of the largest vote cast the preceding election
for any officer elected in that portion of the state for which
the nomination is made; the signatures and the qualifications
of the signers of every such paper to be vouched for by five
of the signers.

3. The free posting and publication of the candidates' names
before election.

4. The voting in a room where electioneering and solicita-
tion of votes is forbidden, each voter indicating his choice by
either secretly marking the names of certain candidates, singly
or altogether, or by inserting other names.

5. The voting, in like manner, upon any question which
may be submitted to the people, at an election for public officers.

6. The use of licensed and certified watchers, to represent
their parties at the polls, thus preventing voters from interfer-
ence by irresponsible persons.

7. The covering up of the numbers on the ballots, and the
sealing up of the lists to which these numbers refer, thereby
preventing election officers from learning who has cast any
given ballot, and removing the temptations to violate their oaths
of secrecy.

8. The punishment of violations of the various provisions of the act.

It will be noticed that the act recognizes the machinery of politics, such as political parties, nominating conventions, and other matters by means of which effect is given to the popular will. This is not the first instance in which these subjects have been recognized and regulated by the legislature. In Leonard v. Commonwealth, 112 Pa. 607, it was held that, "the act of June 8, 1881, P. L. 70, entitled, 'An Act to prevent bribery and fraud at nominating elections, nominating conventions, returning boards, county or executive committees, and at the election of delegates to nominating conventions, in the several counties of the commonwealth,' is a lawful exercise of legislative power, and is an election law within the meaning of § 9, article VIII. of the constitution."

The ground of complaint, as set forth in DeWalt's Appeal, is, not that it denies the right of suffrage, but that it abridges the freedom of voting, and, in its practical operation, it destroys the constitutional equality and uniformity in voting, by discrimination against some voters and in favor of others, notwithstanding that all of them are alike qualified under the constitution ; that, instead of dealing with the electors in the relation in which each stands to the state, and, collectively, as members of one body and that body the state, the act treats of the voters as they are divided into political parties by their voluntary choice ; and it then confers upon the voters of some political parties favors and immunities based exclusively on numbers in party associations or groups, which it absolutely denies, under the prohibition and penalties of the act, to the voters of other political parties which in voters are less numerous, thus making numbers in political association the basis for conferring on some voters the freedom, the equality, and the uniformity assured to every qualified elector of the state by the constitution, and for denying them to others.

To illustrate this position, our attention was called to the fact that at the last general election the highest vote polled in this state was 790,040, and that the vote cast for the Prohibition candidate was 18,429 ; that the vote so cast for the Prohibition candidate was less than three per cent of the entire vote cast, and that, under the provisions of the act, a candidate

Opinion of the Court.

nominated by the Prohibition party would not be entitled to have its ticket printed at the public expense, as in the case of the other two parties. It was contended that the provision or discrimination against the Prohibition party is in violation of that clause of the constitution which declares that elections shall be free and equal, and also § 7, article VIII., which declares that all laws regulating the holding of elections by the citizens shall be uniform throughout the state; that these constitutional provisions were intended to secure to every citizen equality in the manner of voting, and to prohibit the legislature from passing any law which shall give, directly or indirectly, an advantage to some voters which will not equally apply to all voters.

This contention is plausible but unsound. The act does not deny to any voter the exercise of the elective franchise because he happens to be a member of a party which at the last general election polled less than three per cent of the entire vote cast. The provision referred to is but a regulation, and we think a reasonable one, in regard to the printing of tickets. The use of official ballots renders it absolutely necessary to make some regulations in regard to nominations, in order to ascertain what names shall be printed on the ballot. The right to vote can only be exercised by the individual voter. The right to nominate, flowing necessarily from the right to vote, can only be exercised by a number of voters acting together. Three persons may claim to be a political party, just as the three tailors of Tooley street assumed to be " the people of England." * It follows, if an official ballot is to be used, nominations must be regulated in some way, otherwise the scheme would be impracticable, and the official ballot become the size of a blanket. While so regulating it, the act carefully preserves the right of every citizen to vote for any candidate whose name is not on the official ballot, and this is done in a manner which does not impose any unnecessary inconvenience upon the voter.

It was urged, however, that when an elector desires to vote for a candidate whose name is not on the official ballot, he can

---

* Three tailors of Tooley street, in the parliamentary borough of Southwark, London, are said to have held a meeting for the redress of public grievances, and to have addressed a petition to the House of Commons, beginning, " We, the People of England: " Ut ait Canning.—Rep.

only do so by writing the name of the candidate upon the ballot; and that this provision, in view of the limited time allowed the elector for this purpose, renders a compliance with it practically impossible, and in many instances would be a denial of the franchise. This is merely the argumentum ab inconvenienti. We cannot say, as a matter of law, that it would be practically impossible to insert the name by writing. The actual enforcement of the act will test this as well as many other matters connected with its operation. It is at least probable that when tested by experience it will be found to contain many features that will need revision and amendment. This can be safely left to the legislature, and is no reason why we should declare the act unconstitutional. Aside from this, we see nothing in it to prevent the elector from inserting the name of his candidate by the use of a " sticker " as is now practiced. The twenty-third section of the act provides that : " On receipt of his ballot, the voter shall, forthwith and without leaving the space enclosed by the guard-rail, retire to one of the voting shelves or compartments, and shall prepare his ballot by marking in the appropriate margin or place a cross ($\times$) opposite the party name or political designation of a group of candidates, or opposite the name of the candidate of his choice, for each office to be filled, or by inserting in the blank space provided therefor any name not already on the ballot." It would be a strained construction to hold that the word " inserting," as used in the act, means inserting by writing. It certainly does not say so, and we see no reason why we should place this construction upon it. The fact, that by § 12, the name of a substituted candidate, is authorized to be placed upon the ballot by the use of what is commonly known as a " sticker," furnishes no sufficient reason why the name of a candidate, not on the official ballot, should not be inserted in the same way. On the contrary, it recognizes the convenience and the propriety of this mode of insertion.

The only specification of error in Ripple's Appeal is, that the court below erred in refusing the preliminary injunction asked for. The principal ground of contention in this, as in Meredith's Appeal, is that the act in question is a local and special law, and therefore in contravention of the constitution. It was alleged to be special and local legislation, because it does not

apply to any one of the cities of the commonwealth whose bound-
aries are not co-extensive with the county.   If the fact were as
alleged, we would be compelled to declare the act unconstitu-
tional.   An examination of it, however, does not satisfy us that
it does not apply to every portion of the state.   Its language is
general and applies to all public offices, whether in counties,
cities, boroughs or townships.   It contains a vast amount of
detail, and there may be inconsistencies in some of its provisions.
There are others which are not free from criticism, and as be-
fore suggested, its practical working may disclose omissions and
defects which will be doubtless corrected by the legislature in
the future.   The law itself may be regarded in the light of an
attempt on the part of the people to secure a pure, free, and un-
intimidated ballot.   Every presumption is in favor of the con-
stitutionality of the law, and it would require a very clear case
to justify us in striking it down on the ground of its unconsti-
tutionality.

It is impracticable, at this time, for us to consider and discuss
all the details of the act, or all the reasons and arguments urged
against its constitutionality by the learned counsel representing
the respective appellants.   As we view the act there is nothing
in it which is so clearly a violation of the constitution as to
justify this court in striking it down.   It would be out of place
at this time to discuss its wisdom.   If it shall prove beneficial,
the people will probably retain it, with such amendments as
the future may show to be wise.   If it does not meet with the
expectation of the people, they will sweep it away.

> The decree is affirmed in each case, and the ap-
> peal dismissed at the costs of the respective
> appellants.