IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

212    1
39SC 395

## Oughton, Appellant, v. Black.

*Election law—Constitutional law—Marking ballots—Straight party vote—Freedom and equality of elections—Constitution of Pennsylvania, sec. 5, art. 1, Acts of June 10, 1893, P. L. 419, and April 29, 1903, P. L. 338.*

The proviso in the fourteenth section and the clause in the twenty-second section of the Act of June 10, 1893, P. L. 419, amended by the Act of April 29, 1903, P. L. 338, relating to the marking of the ballots for a straight party vote do not violate sec. 5, art. 1, of the constitution of Pennsylvania, which declares that "elections shall be free and equal."

The fact that the elector who votes a straight party ticket may prepare his ballot more quickly than one who does not, does not in any way interfere with the freedom and equality of elections within the meaning of the constitution.

DEAN, MESTREZAT and THOMPSON, JJ., dissent.

Argued Oct. 12, 1904. Appeal, No. 214, Jan. T., 1904, by plaintiffs, from decree of C. P. No. 5, Phila. Co., June T., 1904, No. 1127, dismissing bill in equity in case of John Oughton, J. Claude Bedford, John Story Jenks, Walter C. Lippincott and Walter F. Hall v. Hugh Black, Jacob Wildemore and Charles P. Donnelly, city commissioners. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Bill in equity for an injunction. Before RALSTON, J.

From the record it appeared that the complainants were can-

didates for several offices in the city of Philadelphia. The bill prayed " for an injunction to restrain the defendants from printing the ballots for the election to be held on November 8, 1904, in the county of Philadelphia in such form that ' there shall be printed on the extreme left of the ballot, and separated from the rest of the ballot by a space of at least one half inch, a list of the names of all the political parties or groups of nominees represented on such ballot, and presenting candidates to be voted for at such election,' and so printed that ' a square, of sufficient size for the convenient insertion of a cross mark, shall be placed at the right of each party name or appellation.' "

The defendants demurred to the bill..

The court in an opinion by RALSTON, J., sustained the demurrer and dismissed the bill.

*Error assigned* was decree dismissing the bill.

*Charles C. Binney* and *George W. Guthrie*, with them *Clinton Rogers Woodruff, Charles H. Bergner* and *N. Dubois Miller*, for appellants.— The legislature is empowered to regulate the method of voting at elections, but only to secure equality, not to destroy it: Independence Party Nomination, 208 Pa. 108.

The provision that " elections shall be equal " means that all qualified voters are entitled to equal facilities for voting, and all candidates to equal facilities for receiving votes, in as far as the law undertakes to regulate such facilities : Wood's App., 75 Pa. 59 ; Com. v. Reeder, 171 Pa. 505 ; People v. Hoffman, 116 Ill. 587 (5 N. E. Repr. 596).

The relief sought is warranted by precedent: Eaton v. Brown, 96 Cal. 371 (13 Pac. Repr. 250) ; Craig v. Brown, 114 Cal. 480 (46 Pac. Repr. 870) ; Com. v. Martin, 6 Pa. Dist. Rep. 645.

No precedent for refusing the relief sought can be found in any state whose constitution requires that " elections shall be equal."

*Alex. Simpson, Jr.*, for appellees.—The act is constitutional : Independence Party Nomination, 208 Pa. 108; DeWalt v. Bartley, 146 Pa. 529 ; Patterson v. Barlow, 60 Pa. 54 ; Wood's App., 75 Pa. 59 ; Com. v. Reeder, 171 Pa. 505 ; Cohens v. Vir-

ginia, 19 U. S. 264; Earp v. Cummins, 54 Pa. 394; Allen v. Glynn, 17 Colorado, 338 (29 Pac. Repr. 670); Ritchie v. Richards, 14 Utah, 345 (47 Pac. Repr. 670); Todd v. Election Commissioners, 104 Mich. 474 (62 N. W. Repr. 564); State v. Anderson, 100 Wis. 523 (76 N. W. Repr. 482); People v. Hoffman, 116 Ill. 587 (5 N. E. Repr. 596); Moers v. Reading, 21 Pa. 188. .

OPINION BY MR. JUSTICE BROWN, May 8, 1905:

At the threshold of the elaborate argument in support of their appeal the appellants distinctly admit that the Act of June 10, 1893, P. L. 419, as amended by the Act of April 29, 1903, P. L. 338, is "perfectly complete and perfectly constitutional," if a proviso in the amended fourteenth section and a clause in the twenty-second section, as amended, be eliminated. The proviso is: "Provided further, that each voter may have the opportunity of designating his choice for all the candidates, as nominated by one political party, there shall be printed on the extreme left of the ballot, and separated from the rest of the ballot by a space of at least one-half inch, a list of the names of all the political parties or groups of nominees, represented on such ballots and presenting candidates to be voted for at such election. Such names shall be arranged in the order of the votes obtained, at the last presidential election, by the candidate at the head of the respective tickets of the parties or bodies nominated, beginning with the party that received the highest vote cast. Following the names of such political parties, shall be the names of the parties or principles not presented on the ballot at the last presidential election, arranged alphabetically, according to the party name or political appellation. A square, of sufficient size for the convenient insertion of a cross-mark shall be placed at the right of each party name or appellation. Every mark within such square shall be equivalent to a mark against every name designated by that political appellation, or party name, including candidates nominated by more than one party, or group of citizens. At the head of every ballot shall be printed the following instructions: 'To vote a straight party ticket, mark a cross (✕) in the square opposite the name of the party of your choice, in the first column. A cross-mark in the square opposite

the name of any candidate, indicates a vote for that candididate.'" The clause in the twenty-second section, as amended, is: "If he desires to vote for every candidate of a political party, he may make a cross-mark in the appropriate square, opposite the name of the party of his choice, in the straight party column on the left of the ballot, and every such cross-mark shall be equivalent to a vote for every candidate for the party so marked."

The position of the appellants, as they themselves announce it, is: "It is these provisions giving to voters who wish to vote for all the candidates of one political party the special privilege of doing so by a single cross-mark which occasions the inequality of which the appellants complain, and are also unconstitutional as authorizing a method of voting for political parties, not for men. Without these provisions the act is perfectly complete and perfectly constitutional, so that complete relief can be given by simply declaring the unconstitutionality of these particular provisions without touching the rest of the act. . . . It is this special privilege given to straight-ticket voters and denied to others which injures the plaintiffs, who, as candidates, are opposed by other candidates who can be much more easily voted for. . . . The appellants do not seek to have the whole amended act of 1893 set aside, nor even any single integral feature of that act, but merely to have a single provision, a wholly superfluous and unconstitutional excrescence, declared to be void, this provision being found in two sections only, and its elimination from the act leaving the rest complete in itself and perfectly effectual for the purpose of regulating elections in a constitutional method."

The proviso and clause are assailed as being unconstitutional because, it is contended, they interfere with the freedom and equality of elections, sec. 5, art. I, of the constitution being "elections shall be free and equal." The single narrow question before us is, Does the manner in which an elector is permitted by the statute to designate the ticket for which he wishes to vote interfere with the freedom and equality of elections?

By declaring that elections shall be free and equal the constitutional guaranty is not only that "the voter shall not be physically restrained in the exercise of his right by either civil

or military authority : " Com. v. Reeder, 171 Pa. 505 ; but it is that by no intimidation, threat, improper influence or coercion of any kind shall the right be interfered with. The test of the constitutional freedom of elections is the freedom of the elector to deposit his vote as the expression of his own unfettered will, guided only by his own conscience as he may have had it properly enlightened. Tried by this, the only test, it cannot reasonably be said that because one voter may more quickly prepare his ballot than another the election is not free to both alike. Each votes as freely as the other, but, in doing so, the one who, in a spirit of independence, and in the exercise of his absolute right to be independent, makes up his own ballot, must and does consume more time than the other. This, however, is no interference with his freedom as an elector. It is the very freedom of the election that enables him to mark his ticket just as he pleases, or to make it up without regard to any name that may appear as a candidate on the ballot handed to him. This need be pursued no further and the only question to be considered is the alleged inequality of elections.

What is the real complaint of the appellants ? Whether we confine ourselves to their bill, beyond which we ought not to go in looking for it, or search for it in the elaborate briefs of their learned counsel, it is not that the acts of 1893 and 1903 deprive them, as candidates, of the right to be voted for by qualified electors, or that the latter are deprived of the right to vote. It is simply that certain electors in going into the election booths, possessing no higher, but just the same right to freely cast their votes and have them counted that every other elector in the commonwealth possesses, may mark their tickets more readily and quickly than the elector who, in wishing to assert his absolute right of independence of any political party, makes up his own ticket, and, in doing so, necessarily is required to consume more time. In other words, because those voters who insist upon making up their own tickets, as is their unquestioned right, must necessarily make a number of marks, the contention of the appellants is that elections are not equal if other electors may indicate the candidates of their choice by making fewer marks. Because some in giving expression to a freeman's will must make a number of marks, the position of the appellants, as logically understood, is that elections are not

equal unless the rest of the electors, satisfied with party nominations and willing to vote for political candidates named, are required to spend as much time in marking their ballots. This is not the test of inequality. Each individual voter as he enters the booth is given an opportunity to freely express his will with no one by him to influence or intimidate him, and from the face of the ballot he is instructed how to mark it. If unable to understand the instructions, a qualified elector of the district, selected by himself, may enter the voting apartment and assist him. This is the right given to every elector, and, therefore, is an equal one.

The free and equal exercise of the elective franchise by every elector is not impaired by the statute, but simply regulated. A regulation for the convenience of certain electors providing that they may,—not must,—if they desire to vote a straight party ticket, vote for it by marking a cross in the square opposite the name of the party of their choice is not inequality as against these complainants. They have the right to vote in precisely the same way for all of the candidates on the Municipal League ticket. If they wish to vote for offices for which candidates are not named on their ticket, they not only have the right to do so, but can do so by making the proper marks on the ballot, or writing out the names of their choice. The straight party man—the voter who, as a rule, votes his straight party ticket—may, if unwilling to vote for the ticket named by his party, omit the cross opposite the party name, and by separate marks on the party ticket indicate those candidates on it for whom he will vote, marking on other tickets those for whom he wishes to vote, instead of the candidates named for the same offices on his party ticket. This is the right of every member of the Municipal League with their ticket as printed on the ballot, and the voters belonging to that party can do just what the voters of any other party can do.

There is a provision in the act of 1903 that the voter may write his ballot, and of this the appellants do not complain, for they admit that the act is perfectly complete and constitutional, if the proviso and clause quoted are struck down. Unless there was such provision to enable the voter, not satisfied to vote any ticket on the ballot or for any names appearing on it, to make up an entire ticket of his own choice, the election as

to him would not be equal, for he would not be able to express his own individual will in his own way: Independence Party Nomination, 208 Pa. 108. But what makes the election equal to him—the privilege of writing the name of every candidate for whom he would vote—would have to be regarded as an inequality, if the contention of the appellants is just. They complain of inequality because an elector, in marking his ticket from the names found on the official ballot, cannot make it up as readily and quickly as the voter who is given the privilege of voting a straight ticket by making a single mark. But how much more inconvenient is it, and how much more time must necessarily be consumed when an elector makes up his whole ticket by writing the names of those for whom he would vote. If marking is inequality, writing is more so. The whole matter is but a regulation, working no inequality, but preserving the equal right to vote.

Cases outside of this state have been cited by both sides in support of their respective positions. The one on which appellants place their main reliance is Eaton v. Brown, 96 California, 371.* The constitution of that state directed that all laws of a general nature should have a uniform operation. In the statute regulating elections in force in 1892 there was a provision allowing names of political parties which had filed certificates of nomination to be printed at the head of the official ballots, and that all candidates of a party might be voted for by a mark opposite its name, but a ballot, if so marked, was not to be counted if stamped in any other place. This provision was declared to be unconstitutional for the reason that it was " an attempt to discriminate against classes of voters, and its effect, if allowed to be valid, would be to subject such classes to the alternative of partial disfranchisement, or to the casting of their votes upon more burdensome conditions than others, no better entitled under the fundamental law to the free and untrammeled exercise of the right of suffrage." What was said by the supreme court of California apparently sustains appellants' contention as to inequality under our ballot law, but, in our view, there is no inequality in elections conducted under it. The constitution of Michigan provides that

* Also reported 31 Pac. Repr. 250.   Reporter.

"laws may be passed to preserve the purity of elections and guard against abuses of the elective franchises." By a statute in that state no name could appear more than once on the ballot. If a candidate was named by more than one political party he was put in the column of that one from which the board of election commissioners had first received notice of his nomination. In Todd v. Election Commissioners, 104 Mich. 474,* it was claimed as a reason for the unconstitutionality of the act that certain voters would have to mark their ballots more than once, if they wished to vote a full ticket, while others would only be required to make one mark. The supreme court of the state said that if the effect of the act, as was strenuously argued, was to subvert or impede the right to vote, it was clearly unconstitutional, but added: " The constitution does not guarantee that each voter shall have the same facilities with every other voter in expressing his will at the ballot box, or, to apply the rule to the present case, it does not guarantee to each voter the right to express his will by a single mark. The constitutionality of the law is not to be tested by the fact that one voter can cast his ballot by making one mark, while another may be required to make two or more to express his will. When each has been afforded the opportunity and been provided with reasonable facilities to vote, the constitution has been complied with. All else is regulation, and lies in the sound discretion of the legislature, to whom alone such regulation is committed. Courts cannot hold such provisions unconstitutional because, in their judgment, they are harsh or unwise, or have their origin in partisan purposes. Constitutional laws often have their origin in such purposes, and unconstitutional laws are often based upon pure motives and honest intentions. Courts have nothing to do with the motives of legislators, nor the reasons they may have for passing the law. The polar star of interpretation to guide them is the language of the constitution itself, and the sole question always is, does the law destroy or abridge the right?" In the State ex rel. Runge v. Anderson, 100 Wis. 523;† Ritchie v. Richards, 14 Utah, 345,‡ and People ex rel. v.

---

*Also reported 62 N. W. Repr. 564.   Reporter.
†Also reported 76 N. W. Repr. 482.   Reporter.
‡Also reported 47 Pac. Repr. 670.   Reporter.

Hoffman et al., 116 Ill. 587,* similar views seem to have been entertained. In the latter case it was said "elections are equal, when the vote of every elector is equal, in its influence on the result, to the vote of every other elector, when each ballot is as effective as every other ballot." In DeWalt v. Bartley, 146 Pa. 529, the question raised on this appeal was not before us, but what is there said as to the argumentum ab inconvenienti is pertinent here.

What the legislature has done, has been to provide how free and equal elections are to be conducted. It has confined itself to regulating them, and has not gone beyond forbidden limits by interfering with their freedom and equality. It has neither denied, qualified, nor restricted the right of every elector to vote freely and for the persons of his choice. It has simply told him how he may vote freely and equally with all others, and, in doing so, has made no distinction that affects his freedom or given him a right that is not equal to that of every other elector, to take his ballot to the box, as he has made it up, to be counted as his vote. This system of regulating free and equal elections would be more than a human device, if it did not encounter criticism. Perfect though it were as the wisdom of man could make it, there would still be those among men to point to its defects, and, as in every case of legislation not in accord with the view or sense of right and propriety of those affected by it, the constitution would be turned to as the shibboleth to strike it down. It may or may not be wise legislation; the convenience of the elector may not have been properly considered when it was passed; another system might be more convenient; defects in it may be fairly pointed out and improvements suggested. But these are not matters for us. Our duty is to apply the touchstone of the constitution, and if the response is freedom and equality the act must be upheld. Such is the response here.

The decree is affirmed and the appeal dismissed at the costs of appellants.

MR. JUSTICE DEAN, dissenting:

Section 22, of the act of 1893, as amended, provides as follows: If any voter "desires to vote for every candidate of a

*Also reported in 5 N. E. Repr. 596. Reporter.

political party, he may make a cross mark in the appropriate square opposite to the name of the party of his choice, in the straight party column on the left of the ballot, and every such cross mark shall be equivalent to a vote for every candidate for the party so marked." It is this provision, given to a voter who wishes to vote for all the candidates of one political party, the special privilege of doing so, by a single cross mark, which occasions inequality which it seems to me is unconstitutional because it authorizes a voting for political parties, not for men.

Section 5, of article 1, of the constitution, provides that all "elections shall be free and equal." This provision of the 22d section of the act of 1893, gives a facility and freedom to vote to the voter who desires to cast his vote for a political party, wants to avoid cutting his ticket, which it does not give to the voter who desires to vote for a man instead of a party. The policy of our government and the policy of our constitution are intended to promote independent thought and independent voting. This practical restriction, by the 22d section of the act of 1893, obstructs and hampers the independent voter. He is not on an equality with the voter who desires to vote a straight party ticket. This was strikingly evident in the general election of last year, 1904, when more than 100,000 voters in Pennsylvania cast defective ballots, not because they were unintelligent, but because the obstruction to expressing their choice was so great, that they could not vote readily for the man whom they intended to vote for. Making it easy for one section of voters who desired to vote a straight party ticket, on which no mistake could be made, and hampering and obstructing intelligent voters who desire to vote independent of party, for men, destroys the freedom and equality of voters. I concede that the legislature may regulate a method of voting, to a reasonable extent, but when the effect of a restriction, or a regulation, is to debar a large section of intelligent voters from exercising their choice, the constitution is certainly violated in spirit, if not in letter, and I would hold this act, for that reason, unconstitutional, and so decide.

MESTREZAT and THOMPSON, JJ., concur in dissent.