## Supper, Appellant, v. Stauss.

*Election law—Primary election—Qualification of voter—Party ballot—Act of February 17, 1906, P. L. 36.*

1. Where a citizen at a general election votes the straight ticket of a particular party, he will not be entitled, if challenged, at the next succeeding primary election to receive a ballot of another party, although on the ballot which he voted at the general election were the names of the majority of the candidates of the party for whose ballot he asks at the primary election.

2. A candidate may be voted for by more than one party but he does not thereby lose his relation to a party from the mere fact that his name appears in a column of another party.

3. The act intends that each candidate is to be credited with each vote cast in his favor, no matter on what ticket, to the end that it may be ascertained whether or not he has received a plurality of votes; but it is equally important that a political party or organized body of electors that has made a nomination is entitled to have an accurate computation made of the number of votes cast in its name, so that its rights with respect to the making of nominations in the future may be ascertained.

4. A political party is defined as a company or number of persons ranged on one side, or united in opinion or design in opposition to others in the community; those who favor or are united to promote certain views or opinions.

5. To entitle one to membership in a party he must not only have voted for a majority of the persons who were candidates of that party in the preceding election, but he must have voted for such persons as the candidates of the party to which he claims affiliation; that is, if he voted in a party column, he must have voted for them in the column designated for that party and not in some other party column.

Argued Oct. 15, 1908.    Appeal, No. 52, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1907, No. 4,272, for defendant on case stated in suit of Charles H. Supper v. John Stauss.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, and BEAVER, JJ.    Affirmed.

Case stated in trespass to determine the right of the plaintiff to receive and vote the republican ballot at a primary election.

The case stated concluded as follows:

It is agreed that if the court shall be of the opinion on the

facts stated that the affidavit which the plaintiff offered to make complied with the requirement of the uniform primaries act and entitled the plaintiff to the ballot of the republican party at the primary election aforesaid, and that the defendant wrongfully refused to permit the said affidavit to be made, judgment shall be entered by the court for the plaintiff and against the defendant for damages in the sum of $1.00; otherwise judgment to be entered for the defendant.

The facts are stated in the opinion of the Superior Court.

The court in an opinion by AUDENRIED, J., entered judgment for defendant.

*Error assigned* was in entering judgment for defendant.

*Walter L. Sheppard* and *W. W. Porter,* of *Porter, Foulkrod & McCullagh,* for appellant.—Sec. 10 of the act, in so far as it prescribes the qualifications of party membership, is unconstitutional: Oughton v. Black, 212 Pa. 1.

The act must receive a strict construction: Miller v. Com., 5 W. & S. 488.

The strict construction contended for by the plaintiff, appellant, is in harmony with the purpose and intent of the act.

The construction contended for by the defendant, appellee, would create an inequality in the operation of the act: Weiss v. County Commissioners, 17 Pa. Dist. Rep. 262.

*J. Lee Patton,* with him *Jesse S. Shepard* and *Ziba T. Moore,* for appellee.—Under the uniform primary act any voter may vote for the nomination of any one he may choose to name for any office, within the primary of the party with which he affiliated in the next preceding general election at which he voted. He is free and equal with any other voter, but he cannot join with others to raid the primary election of a party with which he is not affiliated: Independence Party Nomination, 208 Pa. 108.

The protection of the liberty and equality of the voter, the preservation of the purity of his party, depends upon upholding the constitutionality of sec. 10 of the uniform primaries act,

not in overthrowing it: Com. v. Blankenburg, 218 Pa. 339; Weiss v. County Commissioners, 17 Pa. Dist. Rep. 262.

OPINION BY ORLADY, J., May 10, 1909:

A case stated was agreed upon in an action of trespass in the court below, to determine the right of the plaintiff to vote at a primary election, held in the forty-seventh election district in the twenty-second ward of the city of Philadelphia. The plaintiff was a duly qualified elector, duly registered as a resident, under the provisions of the constitution and the laws of the commonwealth, and he presented himself at the regular polling place and asked for a ballot of the Republican party, when he was challenged by a qualified elector on the ground that he was a City party voter, and not entitled to receive the Republican ballot, whereupon he declared and offered to make an affidavit to the effect "that at the next preceding general election at which he voted, to wit: November 5, 1907, he voted for a . majority of the candidates of the Republican party for which ballot he now asks, by voting for them in the City party square." The defendant who was the judge of the election of that district refused to permit the plaintiff to make the affidavit, and also refused to give him the ballot of the Republican party, on the ground that the plaintiff was not entitled to vote at the Republican party primaries, within the meaning and intent of the act of 1906, and that the affidavit which he tendered did not qualify him so to vote. The court below entered judgment for the defendant upon the case stated.

The Act in question was approved February 17, 1906, P. L. 36, and is entitled : "An act providing a uniform method of electing certain party officers and delegates to the state and national conventions, and of making nominations for certain public offices; providing for the payment of the expenses of the same; making certain violations thereof misdemeanors, and prescribing penalties for the violations of its provisions," and is described by Chief Justice MITCHELL in Com. v. Blankenburg, 218 Pa. 339, as: "An enactment to systematize, regulate and put under control of positive law, party nominations for public office. It

is the latest of a series of statutes extending the direct and immediate control of law over methods and details of the exercise of the elective franchise which previously had been left in the unrestricted discretion and control of individuals or party managers. Under the earlier system ballots were prepared by individuals or party officers in any form they desired; nominations were made by party machinery, usually conventions, under party rules and at irregular dates. Justly or unjustly these steps which practically controlled nominations and elections, were exposed to the suspicion of manipulation, not for the convenience of party voters alone, but for undue advantage to individuals and party cliques. The act of 1906, was passed to put an end to this system. . . . No candidates for the public offices therein specified shall be nominated in any other manner than as set forth in the act; the principal object of the act was to break up 'snap conventions' and other devices for unfair ends, under the old system, and one of its principal means of so doing was to enforce uniformity of time as well as methods."

The right of the plaintiff is to be determined by the interpretation of sec. 10 of the act of 1906, which provides: "The qualifications of electors entitled to vote at a primary, shall be the same as the qualifications of electors entitled to vote at elections, within the election district where the primary is held. Each elector shall prove his qualifications and his identity in the same manner in which electors in the election district in which he offers to vote are, or were as may be, required by law to prove their qualifications or identity on election day; each elector shall have the right to receive the ballot of the party for which he asks; provided, that if he is challenged, he shall be required to make oath or affirmation that at the next preceding general election at which he voted, he voted for a majority of the candidates of the party for whose ballot he asks. Upon executing such affidavit, the voter shall be entitled to receive the ballot for which he has called, and to cast his vote according to law." At the general election referred to, the electors of Philadelphia voted for candidates to fill eleven offices, of which seven were places on the bench of

the several courts of the county. The Republican party, the Democratic party and the City party had each nominated the same candidates for these judicial offices, each of the seven candidates being nominated by each of the three parties for the same office for which he had been nominated by the other two, so that a vote cast for the whole ticket of any one of these parties, by the marking of a cross in the party square of either, necessarily involved voting for seven men who were also on the tickets of the other two parties. The defendant, in this case, as judge of the election, was admittedly wrong in refusing to receive the affidavit as tendered; by the Act of June 13, 1840, P. L. 683, he was invested with "power to administer an oath or affirmation to any or all persons requiring or offering to be sworn or affirmed in relation to the right of any person to vote at any election authorized to be held by any law of the commonwealth."

By Act of July 2, 1839, P. L. 519, it is provided: "That the judges of elections within the limits of their respective wards, districts or townships, shall have power and are hereby required to decide on the qualifications of any person claiming to vote at any election, whenever the inspectors thereof shall disagree upon the right of such person to vote, but not otherwise," so that primarily the affidavit in such a case is for the consideration of the inspectors in the first instance, and in the event of disagreement between them, the judges authorized to decide on the qualifications of the person claiming to vote, but not otherwise. However, it is conceded that under the facts in this case, that phase of it is immaterial, it being stipulated, "That if the court shall be of opinion on the facts stated, that the affidavit which the plaintiff offered to make, complied with the request of the the Uniform Primaries Act and entitled the plaintiff to the ballot of the Republican party at the primary election aforesaid, and that the defendant wrongly refused to permit the said affidavit to be made, judgment shall be entered," etc. The act of 1906 is a remedial statute, and in its construction "the old law, the mischief and the remedy are to be kept in mind," so that a liberal construction should be made for the suppression of the mischief complained of and

the advancement of the desired remedy.   There have been a number of recent changes made in our system of nominating candidates for office and each seemed to be unsatisfactory to the public at large, so that the agitation of the subject resulted in the passage of the act in question, under which it is necessary to determine not only how many votes each candidate has received, but on what party ticket the votes have been cast.   It is to be observed that a candidate may be voted for by more than one party, but he does not thereby lose his relation to a party, from the mere fact that his name appears in a column of another party.   A political party is defined as a company or number of persons ranged on one side, or united in opinion or design in opposition to others in the community; those who favor or are united to promote certain views or opinions.   It is intended that each candidate is to be credited with each vote cast in his favor, no matter on what ticket, to the end that it may be ascertained whether or not he has received a plurality of votes; but it is equally important that a political party or organized body of electors that has made a nomination, is entitled to have an accurate computation made of the number of votes cast in its name, so that its rights with respect to the making of nominations in the future may be ascertained.

In all elections we are concerned not only with the question as to which candidates are voted for, but also and of equal importance, with the question as to which party the candidates belong for whom votes were cast.   The party affiliation of a candidate is quite as important as his personality.   The act in question provides for uniformity, and to insure the equal right to cast a ballot in favor of a party, as well as a candidate. The official primary ballots are to be prepared "for each party" so as to be uniform in size, style of printing and general appearance; the form given in the act for the ballot is for "each party," and the official ballot of the designated party is provided for with particular description.

When an elector asks for the ballot of a party, and gives it the party name, as a designation, the majority of the candidates of that party for which he voted at the next preceding

general election is rightly determined by an inspection of the candidates of that party at that election, independent of the fact that these names may have been voted for under other party designations; the political party named by him should control in order to carry out the purpose of the statute, otherwise the members of one party might still meddle in the management of another party, and produce a condition of affairs equally objectionable, whether the members seek the control of a rival party in the interest of their own, or merely lend themselves to promoting the interests of a clique or faction without the other party. An important provision is made in the body of the act, for any party or body of electors, one of whose candidates at the election preceding polled two per centum of the largest entire vote cast, so as to become a party or political organization within the meaning of the act, and the word " candidate " is used in the sense of being a representative of a party, and not in the sense of being an individual. It follows that to entitle one to membership in a party he must not only have voted for a majority of the persons who were candidates of that party in the preceding election, but he must have voted for such persons as the candidates of the party to which he claims affiliation; that is, if he voted in a party column, he must have voted for them in the column designated for that party and not in some other party column. An apt illustration is given in Weiss v. County Commissioners et al., 17 Pa. Dist. Rep. 262, "If the other view were taken, then, under circumstances like the present, where, at the last preceding election, the same persons happened to be named by all parties for a majority of offices, the dominant party could, by dividing its forces at the primaries, easily control both of the minority parties, and thereby practically and indefinitely perpetuate its rule by forcing its candidates upon all party tickets."

When the plaintiff declared that he voted for a majority of the candidates of the Republican party, by voting for them in the City party square, he defined his right to receive the character of ballot he was entitled by law to vote in that election, namely, a City party ballot, and no other. He was as much

entitled under his own statement of facts to receive a ballot of the Democratic party, and such a condition would practically eliminate all definite political organization.

"The constitution confers the right of suffrage on every citizen possessing the qualifications named in that instrument. It is an individual right, and each elector is entitled to express his own individual will in his own way. His right cannot be denied, qualified or restricted, and is only subject to such regulation as to the manner of exercise, as is necessary for the peaceable and orderly execution of the same right in other electors. The rights of electors acting together as a party are equally beyond question; the electors themselves are the only tribunal to decide whether the principles, platform, aim or method of reaching the desired object, are broad enough, permanent enough or important enough to be the basis of united action as a party, and if they so decide, courts must recognize and treat them accordingly:" Independence Party Nomination, 208 Pa. 108.

The citizen's only right to vote depends upon his qualifications under the constitution and the laws, and this right is subject to limitations of age, residence, sex, and other matters which have been always recognized as controlling, and in preserving the personal rights of the voters, political organizations are a necessary means to an end, in formulating and enforcing the policy of the majority of the voters. The test of the constitutional freedom of elections is the freedom of the elector to deposit his vote as the expression of his own unfettered will, guided only by his own conscience, as he may have had it properly enlightened: Oughton v. Black, 212 Pa. 1. When a voter adopts the candidates of a political party by voting for them, by a cross in the appropriate square, he selects and adopts the name of the party as well, and he commits himself as a member of that party at that election.

Association with a party is one of the usual means of putting into execution of the individual views on the public affairs, and while the individual has the right under the uniform primaries act to vote for any candidate he may prefer whose name is not in any of the party columns, when he does elect to

be identified with a party as such, by voting for its candidates in the square set apart for the special purpose of indicating his preference for a political party as such, it is but reasonable to call him a member of the party of his own selection.

The assignment of error is overruled, and the judgment is affirmed.