ANDREW HOPPER v. MAURICE STACK, COUNTY CLERK
OF HUDSON COUNTY.

Submitted July 15, 1903—Decided September 19, 1903.

1. The statute entitled "A further supplement to an act entitled 'An act to regulate elections,'" approved April 14th, 1903 (*Pamph. L., p.* 603), popularly known as the Primary Election law, applies to general elections only. *Held*, that it is not on that account a special law within the constitutional interdict. *Held, also,* that it is not rendered special by reason of its provisions that candidates to be elected by the voters of a single ward or township shall be nominated directly without the intervention of delegates, while those to be elected by the voters of more than one ward or township are to be nominated by delegates from such wards or townships assembled in party conventions.

2. The supplemental act in question is not repugnant to article 4, section 7, paragraph 4 of the constitution, because by one of its sections it is provided that certain specified "sections of the act to which this act is a further supplement shall apply, as far as may be, to the primary elections held pursuant to this act."

3. The right to vote a secret ballot is neither a natural right nor a constitutional right; hence a legislative provision that, if challenged, a voter shall make affidavit that, at the last general election at which he voted, he voted for a majority of the candidates of the party with which he is proposing to act, violates no constitutional right of such voter.

4. It is of the essence of the exercise by the legislature of its police power that citizens may, for the public good, be constrained in their conduct, even in respect to matters otherwise right.

5. The recognition by the legislature of the existence of conditions that, in its judgment, require regulation under its police power, is to be distinguished from the creation by the legislature of conditions that previously had no existence.

6. Primary elections are so far matters of public concern that they are, at the discretion of the legislature, proper objects of reasonable statutory regulation under its police power.

7. Section 42 of "An act to regulate elections" is repealed by the fourth section of the supplement to said act, approved April 14th, 1903.

On rule to show cause why a *mandamus* should not issue to compel the defendant, as county clerk, to receive and file a certificate nominating the relator as the candidate of his party for the office of member of common council from the

Fourth ward of the city of Hoboken, said certificate being in conformity with section 42 of "An act to regulate elections."

Before Justices GARRISON, GARRETSON and SWAYZE.

For the relator, *Allan L. McDermott.*

For the defendant, *George L. Record* and *Robert H. McCarter,* attorney-general.

The opinion of the court was delivered by

GARRISON, J. This is an application for a writ of *mandamus* to compel the clerk of Hudson county to receive and file a certificate of nomination made in accordance with the provision of the forty-first section of "An act to regulate elections," as modified by section 1 of "An act relative to the time of elections, &c., in cities of this state," approved February 28th, 1901. *Pamph. L., p.* 41.

The right that is set up rests upon these statutes, which have admittedly been repealed, if "A further supplement to an act entitled 'An act to regulate elections,'" approved April 14th, 1903, is a valid legislative enactment.

The case, therefore, turns upon the validity of the last-mentioned act, which is popularly known as the Primary Election law. As indicated by this sub-title, the act in question attempts to regulate the primary elections for candidates to be voted for at the general elections, which it undertakes to do, broadly speaking, by extending to such preliminary elections many of the features of the official ballot system, together with other provisions having for their object the prevention of the fraudulent intervention in such primary elections of persons not entitled to participate therein.

It is contended, in the first place, that this act is a special law regulating the internal affairs of certain towns, and hence is unconstitutional. This claim rests upon the fact that the act applies only to elections for officers to be voted for at the

general election for members of assembly—to wit, fall elec-
tions—the argument being that in order to be general it
should include spring elections as well.   There are, however,
two considerations that justify, in a legal sense, the classi-
fication adopted by the legislature—*first,* that the expense of
the proposed machinery would fall· disproportionately upon
many of the smaller municipalities that choose their local
officers in the spring, and *secondly,* that as the act is ad-
mittedly a regulation of established party methods it may
legitimately be confined to those general elections that are
commonly conducted upon party lines, to the exclusion of
those in which, as a rule, purely local issues predominate.
These well-defined characteristics afford a reasonable basis
for the exercise of legislative discretion in the premises, so
that the classification cannot be said to be illusory or a mere
evasion of the constitutional interdict.   This being so, the
act is not unconstitutional for lack of generality.

The provisions that candidates to be voted for by a single
ward or township shall be nominated directly without the
intervention of delegates, while those to be elected by the
voters of more than one ward or township shall be nomi-
nated by delegates assembled in party conventions, are not
special or class legislation; they are merely incidental parts
of the machinery of a general law, fully justified, if the leg-
islature can be called to an account for them, by the relative
complexity of the conditions.

In the next place, it is argued that the supplement is in
violation of the constitutional direction that "no act shall
be passed    *    *    *   which shall enact that any existing
law, or any part thereof, shall be applicable except by in-
serting it in such act."   The basis of this criticism is the
thirty-third section of the supplemental act in question, which
provides that certain specified "sections of the act to which
it is a supplement shall apply, so far as may be, to the pri-
mary elections held pursuant to such supplemental act."

The answer to this contention may well rest upon the
views expressed by Chief Justice Beasley, in *State* v. *Han-*

*cock,* 25 *Vroom* 393, reinforced by those stated in *Bradley & Currier Co.* v. *Loving, Id.* 227; *De Camp* v. *Hibernia Railroad Co.,* 18 *Id.* 43; *Christie* v. *Bayonne,* 19 *Id.* 407, and *Evernham* v. *Hulit,* 16 *Id.* 59, with the further remark that inasmuch as supplemental legislation must always be construed with respect to the statutes that are supplemented, the legislative injunction in question is merely declaratory of a subsisting canon of construction, and hence might be exercised from the act without impairing its effectiveness as a repealer of the sections of the original act upon which the relator must rely.

These are the only constitutional questions raised upon the argument that are susceptible of treatment in concrete form.

The rest of the relator's argument is addressed to the several provisions of the supplemental statute in detail, which are subjected to a variety of criticisms, in which the distinction between legislative power and legislative wisdom is not, perhaps, at all times rigidly observed. Thus, for example, whether the name of a voter's choice shall be printed at public expense or be written with a black lead pencil involves no constitutional question, and the same may be said of several of the minor objections urged.

So much, also, of the argument as assumes that the right to vote is a natural right, and that the secrecy of the ballot is guaranteed by the constitution, must fall with the faulty premises on which it rests.

The right to vote is not a natural right; it is a political duty created by public law. The right to a secret ballot is not a constitutional right; it is given and may be taken away by legislative enactment. *Ransom* v. *Black,* 25 *Vroom* 446.

The argument, therefore, that the affidavit to be made by a challenged voter violates any natural or constitutional right to secrecy possessed by him is entirely without foundation. Moreover, as the voter is not required to say for whom he voted, but only that he voted for a majority of the candidates of the party with which he claims to act, it is difficult to see

wherein such partial avowal is any more inimical to secrecy than is the open and avowed partisan co-operation that has hitherto constituted the voter's credential. Apart, however, from these considerations, the matter, as an incident of police regulation, is clearly within the legislative province, as will appear when the subject of its police power is considered.

Under this branch of the relator's argument a number of provisions are criticised upon the ground that they tend to constrain the otherwise untrammeled conduct of citizens when seeking to give expression to their political preferences, which is said to be one of their natural rights. Assuming that specific instances of this have been shown, no constitutional question is involved, for the reason that it is of the very essence of the exercise by the legislature of its police powers that citizens may for the public good (which is what the word "police" means in this context) be constrained in their conduct even with respect to matters in themselves natural and otherwise right. Limitations of strictly natural rights and reasonable regulation of general constitutional rights are not incompatible with the valid exercise of the police power.

These considerations leave practically untouched the main objection urged under this branch of the relator's argument, which is (I now quote from the brief) "that any statute prohibiting a citizen from participation in the selection of those who are to frame the platform of the political party to which he truly gives, however temporarily, his allegiance, is in violation of those protecting and preserving provisions of his state constitution. * * * The right to vote at a primary election cannot be conditioned upon a surrender of the right to deliberate, to listen and to argue until general election day. * * * The right of citizens to form political parties and to make rules that shall govern procedure within those parties is one that cannot be taken from them by the legislature. * * * The right of citizens to form political parties, to adopt principles and to nominate candidates, is beyond legislative prohibition."

From these extracts, taken from different parts of the brief of counsel for the relator, it will be seen that his argument is directed against the power of the legislature of this state to take from its citizens the right of forming political parties or to form such parties for them; to prescribe the terms of membership in such parties or to make rules governing such members; to determine who may participate in the counsels of a political party or what shall be the nature of such qualification. This argument, therefore, attacks the entire frame of the statute, as counsel conceives it, and especially those features of it that make party affiliation a condition of the right to participate in party counsels, and establish as a test of such right the making of an affidavit as to actual co-operation in the immediate past and a present intention so to co-operate in the immediate future. Against a statute that thus essayed to create political parties or to initiate the system of which they are an essential part, the argument that has been made would possess a force that it does not have when applied to the statute now before us, in which nothing of this sort is attempted. The distinction that has apparently been lost sight of, while one of fact, is of vital significance upon the question of constitutional limitation. Every exercise of police power involves, of necessity, the determination by the lawmaker of some fact quite apart from the exercise of any legislative discretion concerning it. The contrary is not conceivable. Thus it is not conceivable that an act to protect passengers upon railways could have been enacted without the determination by the legislature that railways existed and that passengers were carried by them—whether such passengers required protection, and, if so, of what sort would be the discretionary element in such legislation. Similarly, the act upon our statute book to protect worshippers at camp-meetings could not have been enacted without a determination of the fact of the existence of such associations, the objects of those so associated and the further fact that such objects included immunity from interference by persons having a hostile or even an alien

purpose. This elemental proposition is stated only to emphasize the difference between such determinations by the legislature of conditions of things already in being and enactments by the legislature that bring into existence conditions that previously had not, and but for such legislation would not have, any existence. The distinction is vital in its bearing upon the argument before us, since it marks the distance that separates an act passed for the regulation of conduct upon which citizens had already embarked from the creation by the legislature of institutions that compel citizens to a course of conduct upon which they had not voluntarily entered. Thus, to take the previous illustration, there is a wide difference in a constitutional sense between a statute that recognizes the existence and objects of camp-meetings and affords protection to those who adopt that form of worship, and an act that instituted such gatherings and compelled persons to associate for the purposes prescribed by such act. Repeated illustration cannot make this distinction more plain or add to the force of its application to the present argument. If in place of camp-meetings we read political parties, and if for the avowed object of such religious gatherings we substitute the known purposes of such political associations, we shall have in its simplest form the domain of fact which the legislation in question must have recognized as subsisting before exercising over it the regulative and protective features of the statute under review. Thus the legislature must have recognized as a fact the existence of political parties of varying numerical strength by which candidates for popular election were placed in nomination upon party tickets and platforms. It must likewise have determined that in the selection of such nominees each of these political parties invited the co-operation of voters who were in practical affiliation with it, and resented attempts at participation by or interference from those not so in sympathy. The legislature must, further, have decided that the purposes of these party proceedings were so far public purposes that those engaged in them ought to be protected

in what they had undertaken, and that to this end the police power of the state should be exercised. These matters of fact being established, the element of legislative discretion entered to determine the measure of such regulation and the mode of its exercise. · In all of this there is no calling of anything into existence, no creation of political parties or of primary meetings, no prescription of the terms of membership—in fine, no initiation of any essential matter, but only the recognition of an existing state of facts· and a determination to throw over them the protection of police regulation. With the wisdom or efficiency of this latter determination the judicial branch of the government has nothing whatsoever to do, nor does the preliminary determination of fact concern it when, as in the present case, neither in argument nor in proof is there any suggestion that such determination was not in accord with fact. What the attitude of the courts would be toward legislation of the palpably illusive character suggested by some of the illustrations used upon the argument need not be discussed, not only because the question is not in the case, but also because in no case does one department of the government presume unworthy conduct on the part of a co-ordinate branch.

My conclusion upon this phase of the argument which is in effect the main attack made by the relator upon the statute, so far· as general principles are concerned, is that primary elections, as they in fact exist, are so far matters of public concern that they are proper objects of legislative oversight; that the question of their reasonable regulation presents a problem in legislative discretion the solution of which · is solely a legislative function, which, in the present instance, has been legitimately exercised.

In other jurisdictions a like result has been reached in cases in which the same general principles, although perhaps not identical statutory provisions, have been involved. To that extent, therefore, they are judicial precedents for the present · conclusion. *Ladd* v. *Holmes, 66 Pac. Rep.* 714; *People* v. *Democratic Committee, 58 N. E. Rep.* 124; *In re*

*County Treasurer,* 9 *Col.* 631; *Leonard* v. *Commonwealth,* 112 *Pa. St.* 607; *State* v. *Johnson,* 91 *N. W. Rep.* 840; *Commonwealth* v. *Rogers,* 181 *Mass.* 184.

The contention that the statute in question unconstitutionally limits the selection of election officers has been answered by what has already been said, and appears to be entirely without force when taken in connection with the whole scope of the act.

There remains for consideration. one further matter to which reference should be made. I refer to the declaration in the second section of the supplemental act, that its general scheme and purposes include the filing by ten voters of a petition endorsing *any member of their political party* as a candidate for nomination. It is said this must be taken as a legislative limitation upon the right of electors to choose their own nominees. I do not, however, so regard it. The declaration in question occurs in a sort of preamble to the enacting portion of the statute, whose later sections deal specifically with each feature of the act in a mandatory manner. The matter now under consideration is thus dealt with in the fourth section, which enacts with particularity just how electors may place a candidate in nomination, and in this section no reference is made to any such limitation upon the electors' freedom of choice.

Under these circumstances, if exact efficiency is to be given to the later and specific enactment, it can be done only by treating as ineffectual the declaration of the earlier section —treating it, that is to say, as a preamble would be treated under like conditions. If, however, the legislative intention to be gathered from both sections is that the official ballots furnished at public expense for use at the primary elections by political parties shall contain the names of members of such parties, respectively, no constitutional right is invaded. Citizens who prefer to place in nomination a candidate who is not of the same political party as themselves are free to give expression to such preferences, but in a different manner. How they may do so is a matter of regulation. A difference of opinion between the court and the legislature as to the expedi-

ence of making such a distinction, if such a difference existed, could not find expression in any judicial action, this being one of those matters in respect to which the court cannot, as Judge Cooley phased it, "run a race with the legislature." Interpreted in either of these ways, the fourth section is a valid act of legislation, and, by implication, repeals those sections of the original act upon which the relator relies, and hence his application must be denied. The rule to show cause is discharged.