(46 South. 430.)

No. 17,075.

STATE ex rel. LABAUVE v. MICHEL, Secretary of State.

(April 18, 1908.)

1. CONSTITUTIONAL LAW — STATUTES — ATTACKS ON CONSTITUTIONALITY—REQUISITES OF OBJECTIONS.

Differently from Congress, which possesses only such powers as are delegated to it by the federal Constitution, the Legislature exercises the entire legislative power of the state, except as limited by the state Constitution; and hence an objection to the constitutionality of a statute should specify the particular provision violated.

2. SAME—CONSTRUCTION.

In construing a statute, every doubt must be resolved in favor of its constitutionality.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 46.]

3. SAME—GOVERNMENTAL MATTERS.

A statute involving governmental matters will be construed more liberally in favor of its constitutionality than one affecting private interests.

4. ELECTIONS — PRIMARY ELECTION LAW — CONSTITUTIONALITY—PAYMENT OF EXPENSE.

Primary Election Law (Act No. 49, p. 69, of 1906) § 13, requiring the state to pay part of the expenses of primary elections, does not violate Const. 1898, art. 58, providing that the funds, etc., of the state shall not be granted, etc., to or for any person, etc.

5. SAME.

Const. 1898, art. 212, providing that all elections, except primary and municipal elections in certain towns, when such elections are not held when general state elections are, shall be by official ballot, distributed at the state's expense, does not prohibit the Legislature from

paying the expense of primary elections; and hence Primary Election Law (Act No. 49, p. 69, of 1906) § 13, requiring the state to pay part of such expense, is not unconstitutional as violating such article.

### 6. SAME.

Const. 1898, art. 200, prohibits persons from voting at primary elections or in any nominating convention, etc., unless registered voters, and provides that in all political conventions the apportionment of representation shall be on the basis of population. Article 215 requires the enactment of laws securing fairness in party primary elections, conventions, or other methods of nominating candidates. *Held* that. in naming several methods of making nominations, the articles do not require laws respecting nominations to make such methods available to political parties and voters; but they require simply that, whatever method of nomination the Legislature may adopt, the qualifications stated shall be required of the voters, and that in case of nominations by convention the basis of representation shall be as stated, and that laws securing fairness shall be enacted.

### 7. STATUTES—SUBJECT—APPROPRIATION BILLS —CONSTITUTIONAL LAW.

Act No. 21, Sp. Sess. 1907, re-enacting Act No. 49, p. 69, of 1906, § 13, relating to primary elections, with an appropriation to meet the expense provided for in that section, does not violate Const. 1898, art. 55, requiring appropriations, except in the general appropriation bill, to be made by separate bills, each embracing one subject only.

### 8. CONSTITUTIONAL LAW—ELECTIONS—PRIMARY ELECTION LAW.

Const. arts. 1, 2, declaring that the government is established for the good of the people and that no one shall be deprived of life, liberty, or property without due process of law, and article 15 and Const. U. S. Amend. 9, declaring that the enumeration of certain rights in the Constitution shall not be construed to deny or impair others retained by the people, and amendment 10, declaring that powers not delegated to the United States by the Constitution nor prohibited to the states are reserved to the states or to the people, do not secure to the voters the right to vote for more than one candidate for a nomination; and hence Primary Election Law (Act No. 49, p. 80, of 1906) § 27, precluding participants in the primary from taking part in other nominations for the same office, does not violate those constitutional provisions.

### 9. ELECTIONS—PRIMARY ELECTIONS.

Primary Election Law (Act No. 49, p. 69, of 1906) § 10, is not unconstitutional because it requires voters at primary elections to promise that they will support the nominees.

### 10. SAME.

Primary Election Law (Act No. 49, p. 69, of 1906) § 9, prescribing the qualifications for voters and candidates in a primary, and section 10, providing that before being allowed to vote a voter may be questioned touching his party affiliation, do not require candidates to make any declaration as to party affiliation, and make no provision for their being interrogated.

### 11. STATUTES — SPECIAL LAWS — PRIMARY ELECTION LAW.

The primary election law (Act No. 49, p. 66, of 1906), regulating primary elections throughout the state, is not a local nor a special law, and hence does not violate Const. 1898, art. 48, prohibiting certain local or special laws.

### 12. CONSTITUTIONAL LAW — CLASS LEGISLATION—ELECTIONS—PRIMARY ELECTION LAW —CONSTITUTIONALITY.

That under the primary election law (Act No. 49, p. 66, of 1906) each parish bears part of the expense of an election in the parish, and that, some parishes being larger than others, there is an inequality, and that there is an inequality between candidates, in that the local committees tax the contribution required of local officers, and ·that the amount taxed for a local candidate in a large parish might prove to be larger than in a smaller one, and that the expense of a primary, etc., is paid by the state for the officers to be voted for throughout the state, etc., does not make the act unconstitutional, as being unequal and discriminatory.

### 13. ELECTIONS — PRIMARY ELECTIONS — STATUTES.

Primary Election Law (Act No. 49, p. 69, of 1906) § 10, requiring voters at primary elections to declare their affiliation with the party holding the primary, does not violate Const. 1898, art. 212, securing to a voter the right to prepare his ballot in secrecy.

### 14. CONSTITUTIONAL LAW — DUE PROCESS — PRIMARY ELECTION LAW—CONTESTS.

The primary election law (Act No. 49, p. 66, of 1906) is not unconstitutional on the ground that the time allowed for contesting the result of the primary is so short as not to constitute due process of law, since the Legislature might have withheld any right to contest before the courts.

### 15. STATUTES—"EX POST FACTO LAW" DEFINED.

An "ex post facto law" is one which retrospectively makes a crime of an act which at the time of its doing was not a crime.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, pp. 2527, 2533; vol. 8, p. 7657.]

### 16. SAME.

The primary election law (Act No. 49, p. 66, of 1906) does not violate the constitutional provision against the passage of ex post facto laws.

### 17. ELECTIONS — PRIMARY ELECTION LAW — CONSTITUTIONALITY.

The primary election law (Act No. 49, p. 66, of 1906), providing for the regulating, etc., of

primary elections, is not unconstitutional on the theory that under Const. 1898, art. 215, providing that the Legislature shall enact laws to secure fairness in primary elections, etc., the Legislature may only enact such laws, since the Legislature has all the powers which have not been taken from it.

18. STATUTES — SUBJECTS — CONSTITUTIONAL LAW.

The primary election law (Act No. 49, p. 66, of 1906), providing for calling, etc., primary elections, compelling party nominations for United States Senator, etc., to be made by primary, prescribing the qualifications of electors, etc., voting at such elections, etc., does not violate the constitutional requirement that statutes shall contain but one object, to be expressed in their titles.

19. SAME—PRIMARY ELECTION LAW—CONSTITUTIONALITY—"POLITICAL PARTY."

Primary Election Law (Act No. 49, p. 67, of 1906) § 2, defining a political party to be one that shall cast at least 10 per cent. of the votes cast for Governor at the last preceding election, does not violate Const. 1898, art. 48, forbidding the passage of local or special laws granting special privileges.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5444, 5445; vol. 8, p. 7757.]

20. ELECTIONS—PRIMARY ELECTIONS.

Primary Election Law (Act No. 49, p. 69, of 1906) § 13, requiring the state to pay part of the expenses of primary elections, is not unconstitutional on the ground that the primaries are the mere private affairs of political parties, and that hence public moneys cannot be used toward the payment of their expenses, since the primaries are not such private affairs, but state-regulated elections, constituting part of the state's election machinery.

21. CONSTITUTIONAL LAW — SPECIAL PRIVILEGES.

The provision of the primary election law (Act No. 49, p. 66, of 1906) by which the contributions of defeated candidates toward primary election expenses are not returned to them, whereas those of successful candidates are, does not violate Const. 1898, art. 48, prohibiting the granting of special privileges; it being an exercise of legislative discretion which courts' cannot control.

22. ELECTIONS—PRIMARY ELECTIONS.

The primary election law (Act No. 49, p. 66, of 1906) does not violate Const. 1898, art. 15, providing that the enumeration of rights in the Constitution shall not deny or impair other rights of the people not therein expressed, in that it deprives the people of a reserved right to choose their candidates as they please, since the people have no such reserved right; the Legislature being empowered to prescribe rules and regulations for conducting elections, including primaries.

23. SAME.

Primary Election Law (Act No. 49, p. 69, of 1906) § 9, providing that the qualifications of voters and candidates in primary elections shall be the same as required by the Constitution and election laws for voters at general elections, subject to any additional qualifications prescribed by the respective state central committees, etc., does not violate Const. 1898, art. 197, prescribing the qualifications of voters, and article 16, confiding the legislative power to the Legislature.

Appeal from Civil District Court, Parish of Orleans; Fred. Durieve King, Judge.

Mandamus suit by the state of Louisiana, on the relation of Thomas W. Labauve, against John T. Michel, Secretary of State. From a judgment for plaintiff, defendant appeals. Judgment set aside, and suit dismissed.

Walter Guion, Atty. Gen., for appellant. James Clark Henriques, amicus curiæ. Clarence Samuel Hébert, Hugh S. Suthon, and Taylor Beattie, for appellee.

PROVOSTY, J. The Constitution of 1898, which is our present organic law, adopted the Australian ballot system, according to which the names of all the candidates to be voted for appear upon one ballot, and the voter indicates his choice by stamping the ballot opposite the name of the candidate, or writes the name of the candidate in a blank space left for that purpose. An essential part of the system is that the state prints and distributes the ballots. And since, on the one hand, the determination of whom to put on the ballot cannot be left to the caprice of the state officer to whom is assigned the duty of having the printing done, and since, on the other hand, if that officer were required to print the names of all who applied, the ballot might reach the size of a blanket, it is indispensable that by some means the names to be put on the ballot should be designated to the officer, or, in other words, that the candidates shall have been nominated. Const. art. 212, contemplates that the candidates

may be thus nominated either by the political parties or by nomination paper. Beyond this it does not undertake to regulate nominations, except in so far as is provided in article 200, which reads as follows:

"No person shall vote at any primary election or in any convention or political assembly held for the purpose of nominating any candidate for public office, unless he is at the time a registered voter. And in all political conventions in this state the apportionment of representation shall be on the basis of population."

Apart from the foregoing, the Constitution leaves to the Legislature the regulation of nominations, contenting itself with enjoining as follows:

"Art. 215. The Legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates."

In pursuance of that injunction the Legislature passed Act No. 152, p. 266, of 1898, and has more recently passed Act No. 49, p. 66, of 1906, and two acts amendatory of the latter, namely, Acts Nos. 21 and 27 of the extra session of 1907. Both by said Act No. 152 and said Act No. 49 the duty of having the ballots printed is imposed upon the Secretary of State. By Act No. 152, p. 266, of 1898, three modes of nomination are provided, to wit, by convention, by caucus of "political party or other nominating body," and by nominating paper. Act No. 49 leaves Act No. 152 intact so far as concerns nominations by nomination paper, or by convention or caucus of "nominating bodies" other than political parties (whatever that may be), but restricts political parties to nomination by direct primary.

Plaintiff claims to have been nominated under the provisions of Act No. 152, p. 266, of 1898, by a convention of the Republican Party as the candidate of that party for the office of state Senator, Sixteenth senatorial district, and asks for a mandamus to the Secretary of State commanding that officer to put his name on the ballot which is to be printed for use at the election to be held on the 21st of the present month.

The Secretary of State answers that said Act No. 152, in so far as it authorized political parties to make nominations by the convention method, was repealed by said Act No. 49, and that, therefore, plaintiff has not been nominated, and is not entitled to be placed on the ballot.

To this the plaintiff replies that Act No. 49 is unconstitutional, and that, therefore, Act No. 152 is still in full force and effect.

Plaintiff assigns no less than 21 grounds of unconstitutionality. By way of premise to the discussion of them we will observe that, differently from Congress, which possesses only such powers as are delegated to it by the Constitution of the United States, the Legislature exercises the entire legislative power of the state, except in so far as some limitation has been imposed by the state Constitution, and that, therefore, for successfully assailing the constitutionality of any statute, it is necessary to point out some particular provision of the Constitution which has taken away from the Legislature the power to pass it. We will observe, further, that every doubt must be resolved in favor of the statute. The Legislature is, of necessity, in the first instance to be the judge of its own constitutional powers. Their manifest duty is never to exercise a power of doubtful constitutionality. Doubt in their case, as in that of the court, should be conclusive against all affirmative action. If a court in such case were to annul the law while entertaining doubts upon the subject, it would present the absurdity of one department of the government overturning, in doubt, what another had established in settled conviction, and to make the dubious constructions of the judiciary outweigh the fixed conclusions of the General Assembly.

The law on this point may be taken from

any text-book. Black on Const. Law, p. 61, expresses it as follows:

"Legislators, as well as judges, are bound to obey and support the Constitution, and it is to be understood that they have weighed the constitutional validity of every act they pass. Hence the presumption is always in favor of the constitutionality of the statute. Every reasonable doubt must be resolved in favor of the statute, not against it; and the court will not adjudge it invalid unless its violation of the Constitution is, in their judgment, clear, complete, and unmistakable."

One good ground of unconstitutionality is as fatal to an act as two or more; hence plaintiff's industry in mustering 21 would give rise to a suspicion that, having no very great confidence in any one of his grounds being "clear, complete, and unmistakable," he had sought to make up by quantity what might be lacking in quality. And such, upon examination, turns out to be the fact. Nothing in the Constitution, either there written in express terms, or resulting from necessary implication, is pointed to as depriving the Legislature of the right to pass this statute; but a prohibition is sought to be eked out by vague inference and labored argument. If in any case strained or doubtful deductions are ever to be made to serve for overturning the deliberate work of the Legislature, the courts will certainly not choose for inaugurating such an innovation in constitutional law a case which, like the present, involves, not private rights or private interests, but mere governmental concerns, such as are more safely left to the enlightened judgment of the Legislature.

Plaintiff's first ground of objection is founded upon article 58 of the Constitution, in connection with sections 9 and 13 of the act (Acts 1906, p. 69, No. 49). Article 58 reads:

"The funds, credit, property or other things of value of the state, or any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, association or corporation, public or private."

Section 9 of the statute is that which provides for the qualifications of the voters, and section 13 is that which provides for the state's paying part of the expenses of the election.

A sufficient answer to this ground is that beyond all question the primary is a part of the election machinery of the state, and that, therefore, for the state to pay a part of its expense, is not to apply public funds to a mere private purpose, but simply to defray a legitimate state expense.

The next ground of objection is that by section 13 the state is required to pay a part of the expense of the primary, and that this is prohibited by article 212 of the Constitution.

The article here named is the one by which the Constitution adopts the Australian ballot system and makes some general provisions in regard to it. One of those provisions makes it obligatory upon the state to pay the expense of printing and distributing the ballots for the general election. Plaintiff would construe this provision into one prohibiting the Legislature from paying of the expense of the primary. The said article begins as follows:

"All elections by the people, except primary elections and municipal elections in towns having a population of less than 2,500, when such elections are not held at the same time as general state elections, shall be by official ballot, printed and distributed at the expense of the state."

Plaintiff's argument is founded upon the word "except." But the article plainly says and means no more than that the state shall be bound to pay the expense of printing and distributing the official ballot. It does not say, and does not mean to say, that the state is forbidden to pay the expense of a primary. Did the article read that the state may pay the expenses of all elections, except primaries, the word "except" would convey the meaning contended for. It would then limit the power, and not merely the obligation. In the article as written it limits the obligation, and not the power.

The next ground is based on articles 200 and 215, transcribed hereinabove. The contention is that, by naming the several modes of making nominations, the Constitution has in effect provided that, in any law which the Legislature may pass on the subject of nominations, all these several modes of making nominations must be made available to political parties and voters. But these articles do not so declare, either expressly or by implication. Their meaning is simply that, whatever may be the mode of nomination the Legislature may choose to adopt, the qualifications stated shall be required of the voters, and that in case the nomination is by convention the basis of representation shall be as stated, and that the Legislature shall enact laws to secure fairness. This was the interpretation placed by the Supreme Court of our sister state of Mississippi upon a similar provision in the Constitution of that state. McInnis v. Thames, 80 Miss. 617, 32 South. 286.

The next ground is that Act No. 21 of 1907 contains two objects, one of which is an appropriation, and that, therefore, said act is in contravention of article 55, according to which appropriations, except in the general appropriation bill, "shall be made by separate bills, each embracing but one object.".

In justice to the Legislature, we will say that said act does but re-enact section 13 of Act No. 49, p. 69, of 1906, with an appropriation added to meet the expense provided for in that section. But, even if said Act No. 21 were absolutely null, Act No. 49 would not be affected thereby; and it is only Act No. 49 plaintiff has any interest in attacking.

The next ground is that section 27 violates articles 1, 2, and 15 of the state Constitution and amendments 9 and 10 of the federal Constitution.

Section 27 precludes participants in a primary from taking part in other nominations for the same office.

Articles 1 and 2 of our Constitution are those which declare that government is established for the good of the people, and that no one shall be deprived of life, liberty, or property without due process of law.

Article 15 of our Constitution and amendment 9 of the federal Constitution declare that the enumeration of certain rights in the Constitution shall not be construed to deny or impair others retained by the people.

Amendment 10 declares that the powers not delegated to the United States by the Constitution, nor prohibited to the states, are reserved to the states or to the people.

The argument of plaintiff is that the foregoing provisions of the Constitution secure to the voter the right to change his mind, and to vote, if he so desires, against the nominee of the primary in which he has participated, and that this section 27 attempts to take this right away from him.

The answer is that plaintiff did not need to cite the foregoing constitutional generalities for maintaining a voter's right to change his mind and his politics as often as he changes his shirt, but that a voter has no more right to vote twice at the nomination than he has to vote twice at the election, that after he has voted once at either he has exhausted his right, and that by denying him another vote the Legislature does not deprive him of any right. Such a thing as venal voters is not unknown. Voters of that stripe would find it profitable to be allowed to change their politics and vote at every successive primary, and to affix their names to an endless number of nomination papers; but the Constitutions of the state and the United States do not secure them that right, and do not take away from the Legislature the power to deny it them. The right of the Legislature to adopt a regulation by which voters not qualifying by party affiliation may be excluded from primaries has been often recognized. Kenneweg v. County Com'rs, 102 Md. 119, 62 Atl. 249; State v. Drexel

(Neb.) 105 N. W. 174; Hopper v. Stack, 69 N. J. Law, 562, 56 Atl. 1.

The next objection has reference to the promise which the voters at the primary are required to make that they will support the nominee. It is said that by this promise the nominees at said primary for members of the Legislature find themselves pledged to vote for the nominee of the same primary for United States Senator, and that this is contrary to the duty imposed upon them by the Constitution of the United States in voting for United States Senators.

Suffice it to say of this ground that the engagement in question is precisely the same as that which the member of a political caucus enters into, and that no member of any legislative party caucus has ever thought that he violated his duty under the said provision of the Constitution by becoming a member of the caucus and binding himself to abide by its result.

The next ground addresses itself to section 9, which prescribes the qualifications for voters and candidates in the primary, and to section 10, which provides that before being allowed to vote the voter may be questioned touching his party affiliation.

The argument is that:

"The statute has added two qualifications for candidates and voters: That they must declare their membership in the party calling or holding the primary, and that they must agree in advance to support the nominees."

What is here said is true as to the voter, but not as to the candidate. The latter is not required to make any declaration, and the statute makes no provision for his being interrogated. So far as concerns the questioning of the voter before he is permitted to vote, the matter will be more appropriately discussed later on under another ground of objection. So far as concerns the promise required of the voter, it is a sufficient answer to say that he is not deprived of any

121 LA.—13

right, since he is left at perfect liberty to stay away, which, indeed, is the best thing for him to do, if he does not feel sufficiently confirmed in his political faith to be able to make with safety so reasonable and simple a promise.

The next ground is that said statute is a special law, and is unequal and discriminatory as between the parishes and as between the candidates, and is therefore in violation of article 48 of the Constitution, which reads:

"The General Assembly shall not pass any local or special laws on the following subjects [among others]: Granting to any corporation, association or individual any special or exclusive right, privilege, or immunity."

The law is said to be unequal and discriminatory as between parishes, in that each parish bears a certain part of the expense of the election in the parish, and that, some parishes being larger than others, there is inequality. The inequality between candidates is said to consist in that the local committees fix the contribution required of local officers, and that the amount fixed for a local candidate in a large parish, like Calcasieu, for instance, might prove to be larger than in a small parish, like St. John, and also that the expenses of the primary and distribution of the ballots is paid by the state for the officers to be voted for throughout the state, or throughout a congressional district, and not for local officers.

The answer to all this is, first, that a statute regulating primary elections generally throughout the state cannot possibly be classed as a local or special law; and, secondly, that the alleged inequalities and discriminations complained of are the natural and necessary results of the situation. To make the parish of St. John pay as large an election bill as the parish of Calcasieu, or a candidate for Governor put up as large a contribution as a candidate for constable, or a candidate for sheriff in St. John put up

as large a contribution as a candidate for the like office in Calcasieu, would simply be absurd.

The next objection is that the said statute, by requiring the voter to declare his affiliation with the political party holding the primary, violates article 212 of the Constitution, which secures to the voter the right to prepare his ballot in secrecy.

The answer to this is that the voter, by participating in a primary, impliedly promises and binds himself in honor to support the nominee, and that a statute which exacts from him an express promise to that effect adds nothing to his moral obligation and does not undertake to add anything to his legal obligation. The man who cannot be held by a promise which he knows he has impliedly given will not be held by an express promise. Such a regulation was sustained in Hopper v. Stack, 69 N. J. Law, 562, 56 Atl. 1.

The next ground is that the time allowed by said statute for contesting the result of the primary is so short as not to constitute due process of law.

Considering that the Legislature might have abstained from according any right at all to contest before the courts, and might take away the right to contest the result before the courts even of a final election, this ground can hardly have been urged seriously.

The next ground is that said statute violates the constitutional provision against the passage of ex post facto laws.

An ex post facto law is a law which retrospectively makes a crime of an act which at the time of its doing was not a crime. This ground, too, cannot have been urged seriously, as the statute does not purport to make anything a crime retrospectively.

The next ground is that said statute provides for "calling, holding, conducting, and regulating primary elections, while the Constitution (article 215) only empowers the Legislature to enact laws to secure fairness in primaries."

This ground is based on the idea that, like Congress, the Legislature of a state has only such powers as have been delegated to it by the Constitution; whereas, as already stated, it has, on the contrary, all powers which have not been taken away.

The next ground is that the said statute violates the requirement of the Constitution that every statute shall contain but one object, and that shall be expressed in its title.

The said statute does not contain more than one object. Its sole object is to provide for primary elections, and that object is expressed in its title.

The next ground is that section 2 of the statute, defining a political party to be a party that shall have cast at least 10 per cent. of the votes cast for Governor at the last preceding election, violates article 48 of the Constitution. Said article has already been hereinabove transcribed, and is the one by which the Legislature is forbidden from passing "any local or special laws granting to any corporation, association or individual any special or exclusive right, privilege or immunity."

The answer to this is that the Legislature, by said act, has simply undertaken to regulate primaries, and that, inasmuch as primaries can be held only by parties, it was absolutely necessary to define what should constitute a party. The right of the Legislature to do this has been generally recognized by the courts. State v. Drexel (Neb.) 105 N. W. 174; Fitz v. Jensen, 86 Minn. 19, 89 N. W. 1126; Hopper v. Stack, 69 N. J. Law, 562, 56 Atl. 1; Kenneweg v. Allegany Co., 102 Md. 128, 62 Atl. 249.

In this connection it is not to be forgotten that this law has reference only to nominations by political parties, and not to nominations by individual voters; that the right

is reserved to individuals to nominate by nomination paper.

In the case of State ex rel. Runge v. Anderson, 100 Wis. 535, 76 N. W. 486, 42 L. R. A. 239, the court said:

"As Chief Justice Paxson said, in De Walt v. Bartley, 146 Pa. 529, 24 Atl. 185, 15 L. R. A. 771, 28 Am. St. Rep. 814, without some limit to the right to be called a party and to be represented as such upon the official ballot, any number of persons, however small, might claim such right and to be a representative organization, as did the three tailors of Tooley street, who are said to have held a meeting and petitioned the Parliament of England for a redress of public grievances, styling themselves, 'We, the people of England.'"

If there were no limit upon the proportion of voters required to constitute a party, there would be no limit upon the number of parties entitled to hold a primary; and the consequence would be that either the entire expense of the primary would have to be thrown upon the parties (which would make primaries impracticable), or the treasuries of the parishes and the state would run the risk of being bankrupted by the expenses of a large number of utterly useless primaries.

The next ground was not thought worthy of argument, either orally or in the brief, by the learned counsel for plaintiff, and we hold it in no higher estimation.

The next three grounds are to the effect that, the primaries being the mere private affairs of the political parties, the public moneys cannot be used for contributing towards the payment of their expense.

The answer to these grounds is that the primaries are not the private affairs of the political parties, but state-regulated elections, part of the election machinery of the state.

The next ground is that the provision of the statute by which the contribution of defeated candidates towards the election expenses is not returned to them, whereas that of the successful candidate is, is violative of the same article 48, hereinabove transcribed, against the granting of special privileges.

We see nothing in this provision but an exercise of the legislative discretion, with which the courts have nothing to do. The defeated candidate is left at perfect liberty not to become a candidate and not to make the deposit.

The next ground is that the statute violates article 15 of the Constitution, hereinabove transcribed, in that it deprives the people of their reserved right to "meet and choose and name their candidates as they please."

The answer is that the people have no such reserved right, but that the Legislature has the perfect and undoubted right to prescribe rules and regulations for the conduct of elections, primaries included.

The next and last ground is based upon section 9 of the statute, which reads:

"The qualifications of voters and of candidates, in all primary elections held under this act, shall be the same as now required by the Constitution and election laws of this state for voters at general elections, subject to an additional qualification which may be prescribed by the state central committees of the respective political parties coming under the provisions of this act. The respective state central committees of the respective political parties coming under the provisions of this act shall meet within sixty (60) days after the promulgation of this act and then fix the said additional political qualification as herein authorized."

This section is said to be in violation of article 197 of the Constitution, fixing the qualification of voters, and of article 16, which confides the legislative power to the Legislature. It is said that, these primaries being legal elections, a part of the election machinery of the state, the Legislature is without power to add to the qualifications of the voters as fixed in the Constitution, and that, even if this power resided in the Legislature, it would have to be exercised by itself, the Legislature, and could not be delegated to the state central committees of the

respective political parties, as is attempted to be done in said section 9.

It is of the very essence of a primary that none should have the right to participate in it but those who are in sympathy with the ideas of the political party by which it is being held. Otherwise the party holding the primary would be at the mercy of its enemies, who could participate for the sole purpose of its destruction, by capturing its machinery or foisting upon it obnoxious candidates or doctrines. It stands to reason that none but Democrats should have the right to participate in a Democratic primary, and none but Republicans in a Republican primary. A primary is nothing but a means of expressing party preference, and it would cease to be that if by the admission of outsiders its result might be the very reverse of the party preference. If, therefore, there could not be a primary under our Constitution without the admission of outsiders, the consequence would be that under our Constitution such a thing as a primary would be impossible. The argument, therefore, that in a statute-regulated, or compulsory, primary the qualifications of voters cannot be other than as fixed by the Constitution for the general election, would lead to the conclusion that such a primary was a legal impossibility.

The right of the Legislature to require that nominations shall be by primary and to prescribe additional qualifications to the voters for participating in same has been recognized by the Supreme Courts of several states and denied by the Supreme Court of only one state. Runge v. Anderson, 100 Wis. 533, 76 N. W. 482, 42 L. R. A. 239; State ex rel. McCarthy v. Moore, 87 Minn. 308, 92 N. W. 4, 59 L. R. A. 447, 94 Am. St. Rep. 702; State v. Drexel (Neb.) 105 N. W. 174; Hopper v. Stack, 69 N. J. Law, 562, 56 Atl. 1; Coffey v. Dem. Cen. Committee, 164 N. Y. 335, 58 N. E. 124, 51 L. R. A. 674. Contra, Spier v. Baker, 120 Cal. 370, 52 Pac. 659, 41 L. R. A. 196. In the above case of Coffey v. Dem. Cen. Committee, cited from the Court of Appeals of New York, Chief Judge Parker, who later became the candidate of the Democratic Party for the presidency, being the organ of the court, said:

"These and other abuses, as they were called by the minority members of party organizations, became so common that the demand was made for a primary election law sufficiently comprehensive in scope to assure to all citizens equal rights in primary elections, conventions, and political committees of the parties with which they were allied. This demand the Legislature undertook to meet by Laws 1898. p. 331, c. 179, which was amended by Laws 1899, p. 968, c. 473. These acts recognize the equal importance of primary and general elections, and modeled the conduct of the former upon the general lines of conduct of the latter. They provided for the enrollment of the voter, and the only exaction precedent to his right to vote is that he shall express an intention to support generally at the next general state or national election the nominee of such party for state or national officers."

Our Constitution will be read in vain to discover any provision which, expressly or by implication, takes away from the Legislature the right to require that party nominations shall be by primary. Not only is such prohibition not to be found in the Constitution, but no reason can be suggested why it should have been inserted therein. We do not believe that any instance can be cited where a power has been taken away from the Legislature, except where such power had been abused in the past and there was danger of its being again abused in the future; and since, at the time of the adoption of the Constitution of 1898, there had never been any statute-regulated primaries in this state, it is certain that the Legislature had never abused its power in that connection.

Whether the Legislature could itself undertake to fix the political qualifications of the voters at a primary is a question which need not be discussed in the case, since by the stat-

ute in question the Legislature has not undertaken to do so, but has wisely left the matter to the state central committees of the several parties.

It is not true that it is by delegation from the Legislature that the state central committees hold the power of fixing the political qualifications of the voters at the primary. They hold said power virtute officii, as being the governing bodies of the political parties. The Legislature has simply abstained from interference, leaving the power where it originally resided and naturally belongs. And in so doing it has but obeyed the constitutional injunction to pass laws to secure the fairness of primaries. A primary wherein the governing body of the political body holding it could not determine the political qualification of those who are to have the right to participate in it would not only not be fair, but would be a legal monstrosity.

In conclusion, and as a general commentary upon this statute, we will say that it has been adopted in the exercise of the police power of the state, and that the reader of it cannot but be impressed that its aim has not been to create conditions, or to confer rights or bestow benefits, or to take away rights, but simply to act upon and regulate existing conditions, with a view single to the public interest; that in nearly every state of the Union such a law has been adopted, and the assaults upon it have been repulsed everywhere, except in California alone; and that, finally, as expressed by Judge Parker (People v. Dem. Cen. Com., supra), the idea of such a law is "to permit the voters to construct the organization from the bottom upwards, instead of from the top downwards," and it would be strange indeed if the Constitution had made such a scheme impossible.

Judgment set aside, and suit dismissed, at plaintiff's cost.