BREAUX, C, J.
Plaintiff seeks to have a special school tax of three mills on the dollar decreed noncolleetable and null.
The period for which it is proposed to levy the tax at the rate stated is 30 years on the assessed value of taxable property of school district No. 5 of Concordia parish.
A petition was presented to the police jury of the parish for an election by the voters to determine whether a tax should be levied for the schools or not in the district numbered as above.
The petition addressed to the police jury was granted, and the election was held on May 17, 1910. The result was favorable to the tax.
■ Plaintiff alleges that the ordinance calling the election, and the proceedings of the election are null and void.
The first and important issue is whether the result of the election held on the 17th day of May, 1910, was duly promulgated, and, if promulgated, the date of the promulgation.
The date of promulgation is of importance because defendant has interposed the 90 days prescription plea.
As the taxpayers within the election district have the right to insist upon the promulgation of the election before the levy of the tax, we have applied ourselves, without reference to other questions, to ascertain whether or not there was promulgation made.
To the end of arriving at a conclusion upon the subject, we have considered in the first place the ordinance under which the election was held.
It provided for the opening and closing of the polls, for the promulgation of the election to be made, it is stated, “in accordance with the election laws in so far as applicable.”
As relates to promulgating the returns, it provided for a meeting at the courthouse of the board of supervisors within three days after the closing of the polls, in the presence of three voters, in order to compile the returns and make proclamation of the result.
Three statements were to be written, one copy to be filed with the clerk of the district court, one to be retained by the board of supervisors, and one by the police jury.
The board of supervisors as constituted held the meeting in question, and, to some extent, sought to comply with the requirement of the statute.
[1] The action of the board is assailed by the plaintiff, in the first place, on the ground that this board of supervisors was not legally constituted as there were only two members of the board; the police jury having failed to appoint a third as required.
The effect of this failure to appoint a third member will be considered later in passing upon the questions more particularly of law.
*671 [6] The next point urged by plaintiff is that the police jury has no power to invest the board of supervisors of an election with authority to promulgate the result of an election as those elections are to be held under the general election laws of the state, requiring the Secretary of the State to promulgate the result of the election.
Furthermore, it is urged on the part of I>laintiffi that the police jury ordered the sending of one copy of the triplicate returns to the clerk of court, one copy to the police jury, the third to be retained by the board ■of supervisors. Nothing was said about sending a copy to the Secretary of State.
At this meeting of the board of supervisors, the result of the election was really not promulgated. The returns were not published in the official journal of the state.
The police jury was not represented at all in this asserted promulgation by the board of supervisors.
The president of the police jury assumed the authority, without the least sanction on the part of the police jury, of signing some sort of promulgation of the result. But this act on the part of the president of the police jury, owing to the want of authority, was of no significance whatever.
This attempt at promulgation by the board of supervisors was made on the 18th day of May, 1910.
In our opinion it in itself amounts to nothing as relates to promulgation of the returns.
This must have occurred to the police jury, for on the 6th of June following, at its meeting held that month, a resolution was drawn and adopted promulgating the result.
The ordinance was published in the official journal of the parish on the 18th of June, 1910.
Prior to that time, there had been no notice given, no return made, and really nothing done of any moment.
Going back to the asserted promulgation by the board of supervisors, we take up for decision the question above noted that there was no promulgation because the board had i never been constituted as the law directs. No attempt was even made to complete the board of supervisors by appointing another member of the board as required.
The registrar of voters is ex officio a member of the board of supervisors under the law. The Governor appoints a member and the police jury another.
In organizing the board, those upon whom the duty, in whole or in part, lies to organize it should comply with the law’s requirement. If it be by the appointment of a number of members, it should be done and the organization wholly completed.
After the appointment has been made as required, the question of a quorum may arise and the functions to be exercised by a quorum or the necessity of proceeding without an unavoidably absent member who has been duly notified, but this does not arise before the fully completed organization.
That point has not been reached in this case, for, as before stated, there was no complete board.
In a matter as important as holding an election, whether the purpose be to elect an officer or to determine whether a tax should be levied, the subordinate authority should comply with the law, and make the appointment of a board of supervisors of election as required.
It is a question of policy, and should be considered and complied with from that point of view.
The failure of the police jury to appoint the third member of the board was to say the least irregular.
[2] The next objection of plaintiff is that there was no authority on the part of any one to hold a special election to levy a tax under the laws of the state.
*673 We are unable to agree with that view.
The contention in support of the objection is that Act 131 of 1898 is inconsistent with the requirements of paragraph 2 of article 212. of the Constitution, which reads that some of the provisions of the act shall not apply t° elections for the imposition of special taxes, as the General Assembly is directed to provide special laws for that purpose. That this act (Act 131 of 1898) is general, and not in any way special, and cannot be considered as effective in the face of the requirement that the General Assembly shall provide special laws for the purpose, and that the provisions of the act do not apply to special elections.
The reading of the act shows that the proviso is not as general as claimed. It is in nearly all of its phases a law which airthorizes the holding of a special election.
When this act (131 of 1898) is considered with its amendments, to wit, 145 of 1904 and Act 178 of 1902, it becomes quite evident that in some respects it is special as required by the terms of the Constitution, art. 212, the last sentence of which reads:
“These provisions shall not apply to elections for the imposition of special taxes, for which the General Assembly shall provide special laws.”
While not entirely special, it is sufficiently so to save a portion of it from the effect of the constitutional mandate above referred to as directed to the General Assembly to adopt a special law upon the subject of special elections.
The title of this act last cited above expressly mentions that it is a special statute, and in the body of the act provision is made for the holding of special tax elections. It provides authority as to how and under what conditions the election shall be held; the object in raising the tax; the propositions to be submitted to the voters; the limits within which the election is to be held; the qualificatiohs of the voters; the polling places ; the time of holding the election; all of these are treated with reference to special elections.
Those provisions do not relate to general elections of state and parish officers; nor do they relate to the elections for removing courthouses; nor to the elections for the creation of new parishes or for changing parish lines. They do relate, however, to the special elections for levying school taxes.
True, one of its provisions is that the election shall be conducted under the general election laws, but this does not make the provision for holding a special election general.
The General Assembly in carrying out its plan of election sought to utilize general provisions. Those for instance which relate to the appointment of commissioners, their authority and power, and other provisions to the end of making them special when a special election is held; that is, in such cases, the General Assembly sought to bring the general election laws into use.
There are, as before stated, features of a general law in this act (131 of 1898). They do not have the effect of raising the provisions of the special law to the level of the general election laws; on the contrary, they seek to lower the level of the general law to that of the special law for the purpose of holding a special election.
With what success the lowering or specializing process was adopted we are not greatly concerned, for there remains enough of the special law (131 of 1898 and amendments before cited infra) to authorize the holding of a special election and to promulgate the returns.
It follows that we do not consider this objection as at all fatal to the holding of a special election to levy taxes for the schools.
[3] Again, plaintiff argues that no statute has ever been adopted to render operative article 232 of the Constitution; that is, that *675 Act 174 of 1902, sought to amend and re-enact section 1 of Act 131 of 189S, was a failure in this respect, that all attempts to carry article 232 into effect have mentioned article 233 of the Constitution of 1898, instead of article 232.
The beginning of the preamble and the text of the statute (131 of 1898), and the amendments thereto, show conclusively that the purpose of adopting it was to carry into effect article 232 of the Constitution, and not article 233, as stated in the preamble.
The plaintiff’s contention that no enabling statutes were ever adopted has no merit, for by a cursory reading of the statutes it will be seen that the reference was to article 232, and not to the stated article 233.
The Act 131 of 1898 was twice amended— once by Act 178 of 1902 and afterward by Act 145 of 1904. Together these three acts are sufficient authority to hold a special tax election for schools; otherwise, there was no law such as required to hold a satisfactory special tax election for schools.
Although we maintain the legality of the statute (131 of 1898) and of the different amendments,’ defendants, not having followed the special election laws in matter of this election, are without the protection which the act confers to those who comply with its terms.
[4] As relates to promulgation of the result:
After the police jury has found a majority for or against the tax heretofore, in a number of reported cases of this court, that body promulgated the result of the election.
This body is required under the terms of the law to find the result and to execute the law.
If a majority in numbers and amount shall vote in favor of said levy, then the police jury shall immediately pass an ordinance levying such tax.
See section 20 of Act 214 of 1902, and the Act 131 of 1898, and the amendments thereto.
We are not inclined in the present case to. find under the circumstances that, under the-law, the last promulgation is not sufficient from which to date the current of prescription.
We do not think that it should date from the day that the Secretary of State sought, as contended by plaintiff, to promulgate the return.
This court has never held heretofore that the Secretary of State is the officer who-should make the promulgation in special tax elections for schools. It has been decided that the police jury is the authority. To now decide otherwise might affect values in commerce, and be the cause of annoying litigation.
In order to decide that the police jury is not the proper authority, but that the Secretary of State should make the promulgation,, we would have to find that the general election law is all controlling.
It may be that in some respects this law is to be consulted, but not in all. It contains provisions evidently never intended to be-controlling in special elections; indeed, so many of these provisions that it cannot betaken as the cause under which to hold a special election except perhaps as under all.
We think that the promulgation by the Secretary of State in a general election or in an election under a general law is one of those not applying to special election laws.
In the fourth paragraph of section 21 of Act 152 of 1898 it is provided:
“The board of supervisors of each parish shall, within three days after the closing of the polls, repair to the courthouse, and there, in the presence of at least three voters, and- as many others as may desire to be present, make-a true compiled statement, as shown by the face of the sworn returns of the commissioners in triplicate of the result of said elections and make public proclamation of such result, which compiled statements shall be sworn to before some other officer competent to administer an oath.”
The defendants will have it that the law ends with the above.
*677 But it does not.
The section following contains provisions entirely at variance with all requirements of a special election.
It provides specially that one of the triplicate lists be sent to the Secretary of State, and expressly directs that officer to make promulgation of the returns and publish it in the official state paper at Baton Rouge.
The easy answer to the proposition that the general law is the law having application is that if the section of the above cited act applies, then the Secretary of State, and not the board of supervisors, shall make the promulgation.
It is unthinkable that the General Assembly directed that each board of supervisors shall promulgate the returns in every parish. That would be the inevitable conclusion if we were to agree with defendant that in this case the board had the authority.
[5] We adhere to the ruling heretofore prevailing that the police jury is the authority, at any rate, in this case, for the police jury itself has found it necessary, after the first asserted promulgation, to make another promulgation in due form. We think it is bound by the latter as relates to the date from which the current of prescription begins.
Other constitutional objections were urged by plaintiffs. They were not specially presented in the pleadings. It follows that they were not legally presented to this court.
We have none the less considered them to some extent, and have not arrived- at the conclusion that, even if they had been pleaded, that the pleas would have been maintained.
There remains no necessity of passing on all the constitutional questions raised by plaintiffs. The demand set up is granted by reversing the judgment and remanding the cause. There is no good reason to go further.
In considering the statute, we have been impressed by the rule that laws should not be declared unconstitutional unless beyond all doubt they are unconstitutional. And on this point the following authorities are pertinent: State ex rel. Labauve v. Michel, 121 La. 374, 46 South. 430; Grinage v. Times-Democrat Pub. Co., 107 La. 121, 31 South. 682; Excelsior Planting & Mfg. Co. v. Green, 39 La. Ann. 465, 1 South. 873; State v. Volkman, 20 La. Ann. 587; Le Breton v. Morgan, 4 Mart. (N. S.) 138; Nicholson v. Thompson, 5 Rob. 383; City of New Orleans v. Graihle. 9 La. Ann. 562; 26 Eng. & Am. Ency. of Law (2d Ed.) p. 64; City of New Orleans v. Salamander Ins. Co., 25 La. Ann. 650.
“It has been said by an eminent jurist, that when Courts are called upon to pronounce the invalidity of an act of legislation, passed with all the forms and ceremony to give it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any light upon the subject, and never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act be sustained.” Cooley, Const. Lim. (6th Ed.) p. 216.
We will state that it is fortunate that the General Assembly of 1910 has enacted the statute 256 of that year, as we hope that to some extent at least it will bring to a close the many contradictions growing out of the legislation relating to the manner of holding elections.
The statute just cited has no application here as it was adopted after the election was held.
We will avail ourselves of the occasion to state from a somewhat cursory reading of the just cited act (Act of 1910) that it has been written with due care and seems to have received consideration.
To return to the question of promulgation:
[7] If any promulgation at all was made, it was the promulgation dated the 6th day of June, 1910.
*679 If it be conceded that tbe police jury had. the authority to act as it did (and it does seem that the defendant is bound by its own actions in that respect), then it is quite evident that the current of prescription begins from that date, for it is clearly expressed that prescription begins from the date of the promulgation.
See Act 145 of 1902.
The petition of plaintiff to set aside the returns of the election was filed on the 6th day of August following, clearly within the 90 days after the promulgation had been made.
One of defendant’s contentions is that if the police jury under the law was the proper authority to promulgate the election that it was competent for that body to delegate the power to the board of supervisors of election to make the promulgation.
There is no law authorizing such a delegation of power. If the police jury has the authority, it must act and not attempt to confer the authority upon another body which has no authority to act in any such capacity.
Another point urged by defendant is that the 90 days prescription pleaded cures all irregularities and illegalities, including all the illegalities urged against the asserted promulgation.
As relates to this asserted promulgation— that is, as relates to the act of the board of supervisors — it was no promulgation at all. We have stated that the board had no such authority, and therefore made no promulgation.
Prescription does not have the effect of supplying the absolute want of promulgation of the result of the election, this, of course, only applying to the act of the board of supervisors on the 18th day of May, 1910.
We have not dwelt specially upon the plea of estoppel urged by plaintiff as having the effect of restraining the defendants from | availing themselves of every possible irregularity.
We are certainly of opinion that the police jury having led the taxpayers by its own promulgation of June 6, 1910, to believe that that was the date of promulgation, is scarcely to be heard to urge that it is not the date.
In the last analysis the propositions are: (1) The return should have been promulgated, first, by the board of supervisors; (2) by the Secretary of State; (3) by the police jury.
The last has the weight of precedence and in conflicting legislation there still remains enough authority to sanction its promulgation under the circumstances of the present case.
The asserted promulgation by the board of supervisors was no promulgation at all either under the general or the special law.
No one for an instant avers that the Secretary of State has made any promulgation. The only promulgation possible was that by the police jury.
It is therefore ordered, adjudged, and decreed that the plea of prescription is overruled; plaintiff’s plea of estoppel also.
It is ordered, adjudged, and decreed that the judgment of the district court is avoided, annulled, and reversed. The case is reinstated and remanded to the district court to be proceeded with according to law.
Defendant and appellee to pay the costs of appeal.