FORREST A. HEATH, RELATOR, v. JOHN ROTHERHAM.

Argued September 8, 1909—Decided September 13, 1909.

1. In view of the powers given to chairmen of the county committees of political parties, an act entitled "An act to amend an act entitled 'A further supplement to an act entitled "An act to regulate elections"' (*Revision of* 1898)," sufficiently indicates by its title an intent to legislate as to the manner of electing members of the county committee.

2. It is within the power of the legislature to define a county committee of a political party within the meaning of the act to regulate elections, and only such a county committee as the legislature chooses to recognize can have any right to deal with the election machinery.

3. It is for the legislature to determine how the party affiliations and the resulting right to vote at a party primary are to be determined, and there is no constitutional objection to their deter-

mination, if it is not arbitrary and leaves it to the voluntary will of the voter whether he will take part in the primary or not.

4. Money required to conduct an election for members of the county committee of a political party is not donated or appropriated contrary to the constitutional provision, but is for a public purpose when the county committee is made a part of the election machinery.

5. The requirement that a challenge of a voter at a party primary shall be tried by the two members of the election board belonging to his political party in the case of the two larger parties, and by the whole board in the case of the smaller parties, does not deprive voters of the larger parties of the equal protection of the law.

6. The amendment of the act to regulate elections in 1909 (*Pamph. L., p.* 159) was intended to secure the election of county committeemen of the political parties at an official primary from and after the approval of the act, and requires that the chairman should certify to the clerks the whole number of members to which each election district in the county is entitled.

On application for *mandamus.*

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the relator, *Merritt Lane* (*George L. Record* with him).

For the defendant, *Alan H. Strong* (*Alexander Simpson* with him).

The opinion of the court was delivered by

SWAYZE, J. The defendant in this case, acting as chairman of the Republican county committee of Hudson county, filed with the city clerk of Jersey City a list of vacancies in the county committee. This seems to have been an attempted compliance with the act of 1909. *Pamph. L., p.* 159. The relator complains that it was not a compliance with that act, for the reason that the act requires the chairman of the county committee to file with the clerks of the several municipalities a statement of the whole number of committeemen. The controversy between the parties is whether an entirely new county committee is to be elected at the ensuing primaries, or whether

a certain number of the former members of the county committee hold over pursuant to the constitution adopted by the committee.

The defendant first assails the act itself as unconstitutional upon several grounds, which I will deal with in the order in which they were presented.

First, that the provisions of the act are not embraced within the title, which is "An act to amend an act entitled 'A further supplement to an act entitled "An act to regulate elections," ' " &c. The point made is, that the choice of a county committee has nothing to do with the conduct of a public election. The object of the constitutional provision has been stated often enough to be the giving of notice to the public of the subject-matter of the intended legislation, and if the title is sufficient to apprise the public that legislation of the character proposed may actually be intended, it is sufficient. We think that in view of the fact that the election boards have for many years prior to the enactment of the act to regulate elections, in 1898, been chosen by the chairmen of the county committees of the Republican and Democratic parties, the title has come to have such a meaning that a reasonable man ought to know that legislation affecting the chairman of the county committee so far as concerns his duties in connection with the election may be intended under such a title. By the legislation, for nearly twenty years, the county committees have been recognized as a part of the machinery of public elections, and although thoughtful persons may well think that an exaggerated importance is thereby given to mere party machinery, we think it clear that the constitutional provision requiring the object of an act to be stated in its title is sufficiently complied with in this case. The connection of the chairman of the county committee with the conduct of elections is so important and so intimate that the method of his own selection has a direct bearing upon the public election itself. This objection is therefore invalid. It is true that this court said in *State* v. *Woodruff,* 39 *Vroom* 89 (at *p.* 94), that "a primary is not an election in the sense of the common law; it is merely a method for the selection of persons

to be balloted for at such an election;" but this expression must be read in the light of subsequent legislation and of the recent decision of this court in *State* v. *Bienstock,* 49 *Id.* 256. A primary election may not have been an election in the sense of the common law, but it has been treated as such by our statutory law and in common parlance.

The second objection, that the act seeks to include in the Election act more than one object by intermixing in one and the same act such things as have no proper relation to each other, stands on no better ground than the first objection, and must likewise fail.

The third objection is, that the act impairs the obligation of the contract between members of the party represented by the county committee. This argument rests upon the fact that the Republican county committee of Hudson county is a corporation owning real estate worth about fifteen thousand dollars. The argument carried to its logical conclusion would deny all rights to Republicans unless they are at the same time in some way members of the corporation. We are not now called upon to pass upon the question of property rights. It is quite enough to say that it is within the power of the legislature to define a county committee within the meaning of the election law, and only such a county committee as the legislature chooses to recognize can have any right to deal with the election machinery. There may, at the same time, exist a private corporation bearing a similar name and having property rights, but that private corporation, limited as it necessarily must be in its numbers, is evidently not the county committee which the legislature had in mind, and it may very well be doubted whether it would be within the power of the legislature to give to a private corporation of more or less exclusive membership the control of the election machinery which is vested in the county committees that comply with the legislative requirements. There is, however, another answer to this argument. Mr. Rotherham, the defendant, acting as chairman of the committee, undertook to file a list under the act of 1909. We can hardly assume that he did this without the authority of the Republican county committee. It is not

even suggested that anyone questions that his act was with the tacit assent of all the members of the corporation known as the Republican County Committee. By that act, he and they, therefore, elected to come within the scheme of the legislature, and having so elected, they cannot now say that their membership and the right to vote therefor is not subject to the legislative requirements.

The next objection is, that the legislature has made the affidavit of a voter at a primary conclusive evidence of the voter's qualification. To this the answer is that it was for the legislature to determine how the party affiliations and the resulting right to vote at a party primary were to be determined, and as long as these requirements were not arbitrary, and left it open to the voluntary will of the voter whether he would take part in the primary or not, we think that there was no constitutional objection.

The objection that the statute conflicts with the constitutional provision forbidding the appropriation of money for the use of any society, association or corporation whatever, is equally futile. Since the election of the county committee has a direct bearing upon the conduct of the public election, the money required to conduct the election for members of the county committee is not donated or appropriated to the county committee in any proper sense. It is appropriated for a public purpose, and is as much a matter of legitimate public expense as the cost of regulating the general election itself.

The last objection to the constitutionality of the act is that it deprives the voters of the Republican and Democratic parties of the equal protection of the law, contrary to the fourteenth amendment to the United States constitution. The ground of the objection is that a Republican who desires to challenge a vote at a Republican primary, or whose own vote is challenged, has the challenge tried before a tribunal of two men only—that is, the members of the board of election belonging to his party; while a Prohibitionist or a Socialist, under similar circumstances, has the challenge tried by the whole election board, composed in the ordinary case, and, perhaps, in every district of the state, of two Republicans and

two Democrats. But we think that all that is required in order to secure the equal protection of the law to Republican voters is such a provision as will tend to secure an impartial tribunal, and for very obvious reasons the tribunal provided by the statute for a Republican primary or a Democratic primary is more likely to pass impartially upon party questions than one composed in the same manner as in the case of a Prohibitionist or Socialist primary. The matter is largely one of convenience in the reasonable administration of the election laws, and while it may be that a Socialist or a Prohibitionist would have some ground for complaint, because his right to vote at his party primary was to be determined by officers not members of his party, that objection does not apply in the present case, and even in the case of a member of one of the smaller parties would be an objection of legal nicety rather than of practical value. There is nothing to indicate that the provision is in any way an arbitrary one; it seems to be based rather upon the practical necessities of the case. We do not understand that either the federal or the state constitution requires that every citizen should have his rights determined by exactly the same character of tribunal. In some of the counties of this state the legislature has provided for the trial of small causes before a District Court judge, who is appointed by the governor and is a lawyer, while in other counties, similarly situated, the same class of cases are tried before justices of the peace, gentlemen elected by the voters of the locality and seldom members of the legal profession. The advantage to suitors of the District Court seems to be recognized, for the system is being extended. Yet we believe it has never been suggested that anyone was deprived of the equal protection of the laws because he was required by virtue of his residence in one county or another to bring his suit before one of these tribunals rather than before the other. This disposes of the constitutional objections to the legislation that are now urged, which have not already been passed upon in the case of *Hopper* v. *Stack,* 40 *Vroom* 562.

The more difficult question in the case is the construction of the statute. The latter portion of the section requires the

chairman of the county committee to file with the clerks of the several municipalities "the number of committeemen to be elected to such county or city committee in each year as provided by the constitution or by-laws of such committee." It is obvious that if this provision stood alone there would be room for the contention that the number of the committeemen to be elected in any one year was to be determined by the constitution and by-laws of the county committee itself, and that if, under such constitution and by-laws, a portion of the county committee held over, the chairman would comply with the act if he certified to the municipal clerks the number of vacancies only. The language, however, may, without distortion, be given another meaning, and it may be construed to mean that the chairman shall certify to the municipal clerks the whole number of the committeemen, in order that the clerk may know officially what basis of representation of the party voters has been adopted by the party organization. Such a certification is necessary, because otherwise the municipal clerks could not determine the number of members of the county committee to be chosen, as the basis of representation seems to be left to the committee itself. If the language I have quoted stood alone it would perhaps be difficult to say which construction was the more natural one, and I am quite willing to concede, for the sake of the argument, that in that event the contention of the defendant might well prevail, but this ambiguous language is, we think, made plain upon a consideration of the whole of the language of the section and of the intent of the legislature and the consequences which would follow from adopting the defendant's construction. The section begins by enacting as follows: "In any county in this state the county or city committee of any political party shall be hereafter elected at the primary elections herein provided for, and the members of such county or city committee shall be elected by election districts at such primary elections in the manner provided in this act for the selection of party candidates to be voted for by the voters of a single ward or township." This requires that the county committee shall be elected, not a portion of it; that it shall be elected

after the passage of the act, not that a portion be elected this year and a portion in some subsequent year, however distant, to be fixed by the county committee; and that the members be elected by election districts, regardless of whether the constitution of the county committees had previously provided for elections by wards, townships, boroughs or by the county at large or in any other manner. The evident intent of the legislature was to secure the election of the county committee at an official primary from and after the approval of the act, and this language would be entirely clear if it stood alone. The provision requiring certification is merely ancillary to the main scheme of the act as set forth in its earlier language, and there is nothing that leads us to believe that the legislature intended to alter that general scheme by the provision for a certification of the number of committeemen to be elected. The fact that the chairman is to certify the number to be elected in each year does not indicate necessarily that some were to be elected one year and some to be elected in another year. Its only necessary effect is to require the chairman to certify each year the number to be elected. The conclusion to which we are led by a consideration of the early language of the act and its general scope and purpose is fortified by a consideration of the effect of the other construction. If that construction is correct, it is within the power of a county committee to determine its own constitution and terms of office. It would be quite within the power of any county committee at any time to alter its constitution or by-laws in such manner as to provide that the members then in office should hold during their natural lives, in which event the number to be certified in each year would be only such as would suffice to fill vacancies occurring by death or resignation. Or if it be said that the terms of some members must necessarily expire each year because the chairman must certify each year (a conclusion which by no means necessarily follows), it would still be competent for a county committee to have one member go out each year and to adopt such a basis of representation that the committee would be practically self-perpetuating. In the present case it appears that under the con-

stitution and resolutions in pursuance thereof adopted by the
Hudson County Republican Committee, nearly two-thirds of
the whole number are holdover members. Under the present
constitution their terms would expire next year, but there
is nothing to prevent a modification of that constitution and
an extension of their terms. It is quite impossible for us to
believe that the legislature intended to put it within the power
of a county committee to nullify in practical effect the mani-
fest object of this legislation.

There is no substance in the objection that our construction
gives the act a retrospective effect. We do not hold that the
legislature could change in any way the constitution of the
Hudson County Republican Committee, considered as a so-
cial organization or as a private corporation, or could affect
the property rights of the members by changing the basis of
franchise, so far as it is to be regarded as a private corpora-
tion. All that we hold is that the legislature had power to
determine the constitution of any county committee which as-
sumed to become a part of the election machinery. In this
view the act is prospective only in its effect. But in any
event, by assuming to act under it, as Mr. Rotherham did in
filing the lists with the clerks, he elected to abide by its
terms.

We think, therefore, that the chairman of the county com-
mittee should have certified to the municipal clerks the num-
ber of members to which each election district in the county
was entitled. This he failed to do in the case of Jersey City
at least. Whether he did it in the case of the other munici-
palities or not does not appear. He may, upon a return to
the writ of *mandamus,* show that he has already done that,
but since he has failed in performing the duty imposed upon
him by statute, a *mandamus* ought to issue. The testimony
of the secretary of the county committee leaves it somewhat
in doubt whether the total number of members to be elected is
four hundred and thirty-five or four hundred and thirty-
eight, but an examination of the constitution and of the reso-
lution adopted by the county committee in pursuance thereof,

leaves us in no doubt that two members are to be elected for each election district in the county.

We think that this *mandamus* should be peremptory. There has been a full hearing upon a rule to show cause, and there are no disputed facts. *Kelly* v. *Paterson,* 6 *Vroom* 196.